D. Maimon Kirschenbaum (DK-2448)
Charles Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA
Collective Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

| | |
|---|---|
| **SALIM SHAHRIAR, MUHAMMAD ISLAM, AND MARY HARVEY on behalf of themselves and all others similarly situated,** | **INDEX NO:  08-cv-00057** |
| **Plaintiffs,** | |
| **v.** | |
| **SMITH & WOLLENSKY RESTAURANT GROUP, INC. d/b/a PARK AVENUE RESTAURANT AND FOURTH WALLS RESTAURANTS LLC, d/b/a PARK AVENUE RESTAURANT,** | |
| **Defendants.** | |

--------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT
FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

## **TABLE OF CONTENTS**

MEMORANDUM ....................................................................................................1

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ...................................................................................................3

LEGAL ARGUMENT............................................................................................8

I.    *HOFFMANN-LA ROCHE* NOTICE SHOULD BE ORDERED IN THIS CASE...8

    A. Sending Expedited Notice To "Similarly Situated" Servers Fulfills
    The FLSA's Broad Remedial Purposes. .......................................................9

    B. Notice Is Appropriate Because Plaintiffs are "Similarly Situated" To The
    Other Covered Employees. ........................................................................12

II.   DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS
    PROPER AND NECESSARY UNDER *HOFFMAN-LAROCHE* . ..............14

III. THE PROPOSED NOTICE IS FAIR AND ADEQUATE.......................................15

CONCLUSION....................................................................................................16

Plaintiffs Salim Shahriar, Muhammad Islam, and Mary Harvey (together with other party plaintiffs who have "opted in" to this suit, "Plaintiffs")[1] submit this memorandum in support of their motion for conditional collective certification of their FLSA claims and for Court facilitation of notice of this collective action to potential collective action plaintiffs pursuant to 29 U.S.C. § 216(b) .[2]

## PRELIMINARY STATEMENT

Plaintiffs – a group of restaurant workers at Park Avenue restaurant – filed this case in an attempt to recover unpaid wages from Defendants Fourth Walls Restaurant LLC and Smith & Wollensky Group Inc.( "Defendants" or "Park Avenue") pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  Plaintiffs also seek to change Defendants' unlawful wage and hour practices.

In violation of the FLSA, Park Avenue is and has been paying its tipped employees less than the minimum wage while illegally retaining a portion of their tips by forcing them to share their tips with non-tipped employees and Park Avenue management.

Plaintiffs make this motion to protect the interests of similarly situated Park Avenue servers by providing them with notice of this case.  In an FLSA opt-in collective action – unlike a Rule 23 class action which tolls the running of the statute of limitations for absent plaintiffs – the statute of limitations is tolled only when previously absent plaintiffs consent in writing to join the suit.  29 U.S.C.A. § 256.  Absent notice at this time, potential collective action members' FLSA rights will be prejudiced, the FLSA's

---

[1]  Since the filing this lawsuit less than two months ago, 4 other plaintiffs have opted into this case.

[2]  In support of their motion, Plaintiffs submit the following:  Declaration of Masud Ahad, dated February 12, 2008 ("Ahad Decl."); Declaration of Salim Shahriar, dated February 13, 2008 ("Shahriar Decl."); Declaration of Andrew Mellor, dated February 12, 2008 ("Mellor Decl."); Declaration of Sam Islam, dated February 13, 2008 ("Islam Decl."); Declaration of Mary Harvey, dated February 20, 2008 ("Harvey Decl.").

remedial purposes frustrated, and judicial economies lost. Employees like Plaintiffs, who are being or were paid less than the minimum wage are particularly unlikely to have the resources to pursue their lost wages on an individual basis. If their claims are not collectively pursued, many claims will go unheard and Park Avenue's unlawful practices unchallenged.

It is well-settled that "[t]he standard for certification at this stage is a lenient one that typically results in certification." *Masson v. Ecolab, Inc.,* No. 04 Civ. 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). Plaintiffs need only make a minimal showing that they and the other members of the proposed collective action are "similarly situated," typically consisting of the Complaint's allegations and a small number of declarations. *Id.* Here, Plaintiffs' pleadings and declarations are more than enough to meet this standard.

Thus, Plaintiffs ask the Court for:

(1)     Conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all Park Avenue employees in any tipped position, including but not limited to captains, front waiters, back waiters, servers, runners, and/or busboys ("Covered Employees") within the last three years (the "FLSA Period");

(2)     Court facilitated notice of this FLSA action to the Covered Employees in the form of Exhibit A hereto;

(3)     Production of names, last known mailing addresses, alternate addresses, all telephone numbers, work locations, and dates of employment of all Covered Employees; and

2

(4)     Posting of the Notice, along with the consent forms, in a place where putative plaintiffs are likely to view it.

## BACKGROUND

Defendants collectively own/operate(d) Park Avenue restaurant in midtown Manhattan.  Plaintiffs, who work(ed) as tipped employees at Park Avenue, bring this action for unpaid wages on behalf of themselves and all Covered Employees.

Defendants systematically paid Plaintiffs and the rest of the Covered Employees less than the federal minimum wage of $5.15 per hour ($5.85 as of July 2007),[3] taking a purported "tip credit" against the minimum wage under the FLSA.  *See* 29 U.S.C.A. § 203(m).   However, the FLSA's tip credit is not available to an employer, such as Park Avenue, that requires tipped employees to share their tips with employees that do not "customarily and regularly receive tips."  *Id.*

As described in further detail below, until mid-2007, Park Avenue did not maintain a tip-pool; rather it required tipped employees to share tips with other employees, including employees that are not customarily tipped.[4]  In 2007, Park Avenue instituted a tip-pool, which included the same improper employees,[5] and added at least one managerial employee to the tip-pool.[6]

Park Avenue required its tipped employees to share tips with (i) expediters, (ii) silver/glass polishers and (iii) coffee makers both before and after the tip-pool was

---

[3]     Mellor Decl. ¶ 2; Harvey Decl. ¶ 2; Islam Decl. ¶ 2; Ahad Decl. ¶ 2; Shahriar Decl. ¶ 2.

[4]     Mellor Decl. ¶ 3;  Harvey Decl. ¶ 3; Islam Decl. ¶ 3; Shahriar Decl. ¶ 3.

[5]     Mellor Decl. ¶ 10; Harvey Decl. ¶¶ 14-15, and Ex. B;  Islam Decl. ¶¶ 15, and Ex. A; Ahad Decl. ¶¶ 18-22, and Ex. A; Shariar Decl. ¶ 15, and Ex. A..

[6]     Harvey Decl. ¶ 17; Islam Decl. ¶ 17; Ahad Decl. ¶5-6; Shariar Decl. ¶ ¶ 15-16.

instituted.[7]  Plaintiffs and the declarants have provided the specific names of the non-tipped employees with whom they were required to share tips.[8]  None of these employees provided direct customer service or talk to customers; their duties respectively are (i) calling orders into the kitchen, (ii) polishing silver and glass, and (iii) making coffee.[9] Accordingly, Park Avenue relinquished its right to the FLSA's tip credit by requiring tipped employees to share tips with these employees.  *Myers v. Copper Cellar Corp.,* 192 F.3d 546, 550-551 (6th Cir. 1999) (because employees "abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, they could not be validly categorized as 'tipped employees.'"); *Dole v. Bishop,* 740 F.Supp. 1221, 1228 (S.D. Miss. 1990) (time spent "cleaning bathrooms and other general areas of the restaurant, chopping vegetables, and making puddings and ice cream" not tipped work under the FLSA); *See U.S. Dep't of Labor Opinion Letter,* 1997 WL 998047 (Nov. 4, 1997) (dishwashers whose duties included setting up glasses in customer areas and occasionally responding to customer requests unlikely be tipped employees under the FLSA).

        In mid-2007, added to this violation, while continuing its previous violation.  At that time, Park Avenue changed its tipping out system; instead of requiring each individual server to tip-out to other employees, Park Avenue unilaterally instituted a mandatory tip-pool, the terms of which were maintained and enforced by the restaurant's

---

[7]    Mellor Decl. ¶ 3,10;  Harvey Decl. ¶¶ 3,14-15, and Ex. B; Islam Decl. ¶¶ 3,15, and Ex A.; Shahriar Decl. ¶¶ 3,15 and Ex A..

[8]    Harvey Decl. ¶ ¶ 5,7,8; Islam Decl. ¶ ¶ 5,7,9;  Shariar Decl. ¶ ¶ 5, 7, 9.

[9]    Mellor Decl. ¶ 4-5; Harvey Decl. ¶¶ 4,6; Islam Decl. ¶¶ 4, 6; Shariar Decl. ¶ ¶ 4,6.

management, not the servers or similarly tipped employees.[10]  When one employee asked

for information pertaining to the details of the tip-pool, management told her that the

information is confidential.[11]  After the implementation of the tip-pool, Park Avenue

continued to illegally require employees to share tips with expediters, silver polishers and

coffee makers by placing them in the tip-pool.[12]  In addition, Park Avenue added to its

violation by paying tip pool money to at least one manager (Roger Moller).[13]  With

regard to expediters and managers, Park Avenue attempted to conceal its violation of the

law by listing expediters under the "Waiter/runner" section in the tip-out sheet and

manager Roger Moler by initials ("RM") only (as opposed to the other employees listed

by name) in the "Barista" section.[14]

  By paying management from money diverted from the Covered Employees' tip

pool, Park Avenue paid management out of the tips that are left by customers for the

Covered Employees.  This is a violation of the FLSA.  *Chung v. New Silver Palace Rest.,*

246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("The taking of shares of waiters' tips by

[persons] with managerial authority . . . violates the statutory condition that "all tips"

received by the waiters and busboys be "retained" by the waiters and busboys."); *Ayres v.*

*127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) ("Because [a manager who

participated in the tip pool] 'd[id] not qualify for the tip credit . . ., tips received by

plaintiffs may not be considered as part of wages paid to them for purposes of satisfying

---

[10] Mellor Decl. ¶ 8-9; Harvey Decl. ¶¶ 12-13; Islam Decl. ¶¶ 12-13; Ahad Decl. ¶¶ 3,4; Shariar Decl. ¶ ¶ 12,13.

[11] Harvey Decl. ¶ 27.

[12] Mellor Decl. ¶ 10; Harvey Decl. ¶¶ 14-15, and Ex. B;  Islam Decl. ¶¶ 15, and Ex. A; Ahad Decl. ¶¶ 18-22, and Ex. A; Shariar Decl. ¶ 15, and Ex. A..

[13] Harvey Decl. ¶ 17; Islam Decl. ¶ 17; Ahad Decl. ¶5-6; Shariar Decl. ¶ ¶ 15-16.

[14] Harvey Decl. ¶¶ 15,19, and Ex. B; Islam Decl. ¶ 18; Ahad Decl. ¶ 7, and Ex. A; Shahriar Decl. ¶ 16, and Ex. A.

defendant's minimum wage obligations.'") (citation omitted).

Mr. Moler's job functions clearly make him management. In addition to managing the bar, his primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) scheduling and/or vacation requests, (f) verifying the money reports at the end of each night, and (g) sending employees home early.[15] *See Ayres,* 12 F. Supp. 2d at 307-08 (describing as managerial persons whose authority included the power to "interview job applicants, grant time off, allocate overtime work, transfer employees and recommend wage increases.") (quotations omitted).

Mr. Moler was introduced to Park Avenue employees as a manager and referred by them as a manager.[16] Mr. Moler interviewed employees for hire and disciplined employees,[17] including opt-in plaintiff Masud Ahad, who was written up and disciplined by Mr. Moler.[18] Mr. Moler frequently closed the restaurant, and employees needed his permission to leave the restaurant.[19] Mr. Moler was often the most senior Park Avenue member present in the restaurant.[20]

If a server had to void a transaction, Mr. Moler was able to authorize the void.[21] Mr. Moler also had special cards or access codes with which to access the computer system to perform managerial functions such as voiding checks, reopening closed checks,

---

[15]  Harvey Decl. ¶¶ 22; Islam Decl. ¶ 23; Ahad Decl. ¶ 12; Shahriar Decl. ¶ 21.

[16]  Harvey Decl. ¶¶ 17, 19; Islam Decl. ¶¶ 17, 19; Ahad Decl. ¶¶ 7,9; Shahriar Decl. ¶ 17.

[17]  Harvey Decl. ¶ 21; Islam Decl. ¶¶ 21-22; Ahad Decl. ¶¶ 10-11; Shahriar Decl. ¶¶ 19-20.

[18]  Ahad Decl. ¶ 11.

[19]  Harvey Decl. ¶ 20; Islam Decl. ¶ 20; Ahad Decl. ¶ 9; Shahriar Decl. ¶ 18.

[20]  Harvey Decl. ¶ 23; Islam Decl. ¶ 24; Ahad Decl. ¶ 13; Shahriar Decl. ¶ 22.

[21]  Islam Decl. ¶ 25; Ahad Decl. ¶ 14; Ahad Decl. ¶ 14; Shahriar Decl. ¶ 24.

and reauthorizing checks.[22]  When customers asked to speak to a manager, they were referred to Mr. Moler.[23]

Plaintiffs' submissions show that Park Avenue's actions were in violation of the FLSA during the entire FLSA Period and that all Covered Employees are and were similarly situated under § 216(b) of the FLSA for the entire period.  The submissions show that Plaintiffs and the other Covered Employees are similarly situated in their suffering of the consequences of Defendants' violations.  The sample tip-out sheet (attached as Exhibit A to the Harvey Decl.) includes all tipped employees for a given night, and shows that prior to the tip-pool, all the servers working on a given night all tipped out to the same categories of employees, which include expediters, silver/glass polishers and coffee makers. Similarly, the sample tip-pool sheets (attached as exhibits to Shariar Decl., Harvey Decl. and Ahad Decl.) include the entire wait staff for given nights, and show that under the tip-pool, (*i.e.* from mid-2007 on), every member of the tip-pool shared her tips with the same group of people, which illegally included the same improper employees (and at least one manager).  In short, Plaintiffs have submitted clear evidence that throughout the FLSA Period, each tipped employee was subject to the same illegal tipping out requirements.

As a result of Defendants' illegal tip practices, Defendants must "disgorge the amount of tip-credit deducted from each plaintiff's wages," and return to each plaintiffs the amount of tips wrongfully withheld.  *Chang v. Sung Yue Tung Corp.*, 2007 WL 313483, **29-30 (awarding both the tip-credit differential and wrongfully withheld tips where plaintiffs were required to share tips with improper employees).

---

[22]    Harvey Decl. ¶ 25; Islam Decl. ¶ 27; Ahad Decl. ¶ 17; Shahriar Decl. ¶ 26.

[23]    Harvey Decl. ¶ 24; Islam Decl. ¶ 26; Ahad Decl. ¶ 15; Shahriar Decl. ¶ 25.

## LEGAL ARGUMENT

To protect proposed collective action members' rights and interests, and to promote judicial economy and effective case management, the Court should approve notice to be distributed to all Covered Employees who worked for Park Avenue at any time during the FLSA period.

Notice is appropriate at this early, pre-disclosure, pre-discovery stage of the case because the initial pleadings and preliminary evidence show that all Covered Employees are "similarly situated employees." They all worked as tipped employees at Park Avenue, they all were paid below the federal minimum wage, they all were required to share their tips with individuals that destroy the FLSA's tip credit. Thus, they "together were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007) (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

## I. 216(b) ("*HOFFMANN-LA ROCHE*") NOTICE SHOULD BE ORDERED IN THIS CASE.

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of minimum wage and overtime compensation. 29 U.S.C.A. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v. E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007).

## A. Sending Expedited Notice To "Similarly Situated" Tipped Employees Fulfills The FLSA's Broad Remedial Purposes.

Expedited notice is critical in FLSA actions.  Unlike absent class members in a Rule 23 class action, potential class-member employees in a FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit.  29 U.S.C.A. § 216(b); *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied,* 536 U.S. 934 (2002).  The statute of limitations continues to run on each individual's claim until she files her written consent form with the Court.  29 U.S.C.A. §§ 255, 256(b).  To insure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has ruled that courts have broad authority to facilitate early notice to potential opt-in plaintiffs of the existence of the lawsuit. *Hoffman-Laroche*, 493 U.S. at 170.  Collective actions also provide plaintiffs the opportunity to "lower individual costs to vindicate rights by pooling resources."  *Id.* Thus, timely distribution of a notice of pendency is crucial in an FLSA collective action. In order to successfully move for conditional certification of a FLSA collective action, Plaintiffs need only meet the "minimal burden" of showing that the members of the proposed class are "similarly situated."  *Lee*, 236 F.R.D. at 197; *Fasanelli*, 516 F. Supp. 2d at 321.  Plaintiffs are required to make only a "modest factual showing" that they and potential collective action members were victims of "a common policy or plan that violated the law."  *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 104 (S.D.N.Y. 2003); *Fasanelli*, 516 F. Supp. 2d at 321.[24]

---

[24]  *See Toure v. Central Parking Sys. of N.Y.*, No. 05 Civ. 5237(WHP), 2007 WL 2872455, *2 (S.D.N.Y. Sept. 28, 2007) ("relatively lenient evidentiary standard" used to review "plaintiffs' modest factual showing"); *Cuzco*, 477 F. Supp. 2d at 633 (plaintiff has "minimal burden" to make "modest factual showing"); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("plaintiffs have satisfied their minimal burden of showing that they are "similarly situated" to the proposed class members"); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) DF, 2005 WL 3240472, *5 (S.D.N.Y. Nov. 30, 2005) (stating that plaintiffs "face only a very limited burden" and

To "facilitate[e] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case," extensive discovery is not necessary at the notice stage. *Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (citations omitted); *See also Iglesias-Mendoza,* 239 F.R.D. at 368 ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Zhao v. Benihana, Inc.*, No. 01 Civ. 1297(KMW)**,** 2001 WL 845000 at **2-3 (S.D.N.Y. May 7, 2001) (ordering notice based on "scant evidence"); *Hoffman,* 982 F. Supp. at 262 ("Nor must this Court wait for defendant to complete its discovery before authorizing class notice.") (citing *Braunstein,* 600 F.2d at 336). In lieu of discovery, courts rely upon detailed allegations in a complaint supported by employee declarations to determine whether plaintiffs and potential opt-ins are "similarly situated." *See Gjurovich,* 282 F. Supp. 2d at 104. In relying on employee declarations, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Serv. Auto. Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). "[T]he initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 322.

Plaintiffs' initial burden is "minimal," in part, because the "similarly situated" finding can be revisited at the second stage of the certification process" once discovery is

---

noting the "minimal nature" of the burden); *Masson,* 2005 WL 2000133 at *13 ("courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate"); *Hoffmann,* 982 F. Supp. at 261 (requiring only a "modest factual showing"); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, *2 (E.D.N.Y. Oct. 11, 2007) ("fairly lenient" standard "requires only a 'modest factual showing'").

completed. *Cuzco*, 477 F. Supp. 2d at 632 n.4; *Zhao v. Benihana, Inc.*, 2001 WL 845000 at *1 ("The Court need only reach a preliminary determination that potential plaintiffs are similarly situated; the inquiry is 'less stringent than the ultimate determination that the class is properly constituted.'").[25]

The standard for authorizing notice to similarly-situated workers is much lower than the standard for class certification under Federal Rule of Civil Procedure 23. Unlike Rule 23, section 216(b) requires no showing of numerosity, typicality, commonality, or adequate representation. *See Mazur,* 2005 WL 3240472 at *4; *Patton.* 364 F. Supp. 2d at 267 (plaintiffs' burden under section 216(b) "is significantly less exacting than the matters that must be demonstrated to sustain certification of a class under Rule 23"); *Masson,* 2005 WL 2000133 at *13 (same). The burden under 216(b) is more lenient than under Rule 23, in part, because a collective action is not a representative action and does not raise the same due process concerns that Rule 23 raises.

> [The] FLSA's opt-in provision simply provides an opportunity for potential plaintiffs to join the action but does not bind those who do not; by contrast, the 'opt-out' regime under Rule 23 does bind absent class members who nevertheless are deemed to have had adequate opportunities to participate in the action brought on their behalf.

*Patton,* 364 F. Supp. 2d at 267 (citations omitted).

Courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated. *Mazur*, 2005 WL 3240472 at *4 ("A Plaintiff need not show an actual violation of the law."); *Hoffman,* 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that

---

[25]  *See also Gjurovich*, 282 F. Supp. 2d at 105; *Realite v. Ark Rests. Corp.,* 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); *Levy v. Verizon Info. Servs.*, Nos. 06 CV 1583(NG)(SMG), 06 CV 5056(NG)(SMG), 2007 WL 1747104, *3 (E.D.N.Y. June 11, 2007); *Mazur*, 2005 WL 3240472, at *5.

a definable group of 'similarly situated' plaintiffs can exist here.").[26]  "[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case." *Krueger v. New York Tele. Co.,* Nos. 93 CIV. 0178-79, 1993 WL 276058, *2 (S.D.N.Y. July 21, 1993).

Once the court determines that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the court "conditionally certifies" the collective action.  Plaintiffs then may send court-approved notice to potential members who may elect to "opt-in" pursuant to section 216(b) by filing written consents.  The action proceeds as a collective action throughout the discovery process.  *Masson*, 2005 WL 2000133 at *13 (citation omitted).

It is only later down the road, after the completion of discovery, that the Court need engage in a second, more heightened, stage of scrutiny as to whether the proposed class is in fact similarly situated for the purposes of maintaining, the collective action. *See id.* at *12.

### B.  Notice Is Appropriate Because Plaintiffs Are "Similarly Situated" To The Other Covered Employees.

Far exceeding a "modest factual showing," Plaintiffs have submitted substantial evidence of Park Avenue's unlawful common policy and practice of illegally retaining tips and failing to pay the Covered Employees the minimum wage.  At this early stage of the case, a total of seven people have asserted the allegations in the Complaint against

---

[26]  *See Hoffman-La Roche,* 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."); *Lynch,* 491 F. Supp. 2d at, 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated"); *Levy,* 2007 WL 1747104 at *3 (same).

Defendants by joining and/or opting into the lawsuit.  Plaintiffs have submitted declarations and evidence from five Park Avenue tipped employees; all suffered from the exact same wage and hour violations at Park Avenue and all assert that all Covered Employees were in the precise same situation.

Plaintiffs' detailed allegations in the Complaint and declarations show that Defendants violated the FLSA's minimum wage and tip-credit laws with respect to all Plaintiffs and potential plaintiffs.  The FLSA requires employers to pay employees a legally prescribed minimum wage of $5.15 per hour.  *Chan v. Sung Yue Tung Corp.,* 03 Civ. 6048 (GEL), 2007 WL 313483, *17 (S.D.N.Y. Feb. 1, 2007) (citing 29 U.S.C. § 206(a)(1)).  Only under particular circumstances may an employer claim a "tip credit" and pay tipped employees at a rate less than the minimum wage.  29 U.S.C.A. § 203(m). Those circumstances do not exist here because Defendants lost the right to take a tip credit by requiring tipped employees to share their tips with non-customarily tipped employees such as expediters, coffee makers, silver/glass polishers and managers.  *Id.; Myers v. Copper Cellar Corp.,* 192 F.3d 546, (6th Cir. 1999)  (tipped credit destroyed where employees were required to share tips with employees whose primary duties included food and kitchen preparation and did not interact with customers); *Chung,* 246 F. Supp. 2d at 230 ("The taking of shares of waiters' tips by [persons] with managerial authority . . . violates the statutory condition that "all tips" received by the waiters and busboys be "retained" by the waiters and busboys."); *Ayres*, 12 F. Supp. 2d at 309 (same).

The allegations in the Complaint and the declarations, if proven, demonstrate that Defendants maintain illegal policies and practices that similarly (indeed, identically) affect all tipped employees at Park Avenue.  In *Realite,* this Court authorized notice in a

13

similar case, where plaintiffs alleged that employer violated FLSA tip credit rules by "requiring tipped employees to share tips with non-service employees who would not regularly receive tips." 7 F. Supp. 2d at 307, and at n.2.  *See also Fasanelli*, 516 F. Supp. 2d at 322 ("[c]onditional class certification is appropriate . . . where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations.")[27]

Plaintiffs' showing clearly warrants the issuance of collective action notice at this lenient stage of the proceedings.  Courts routinely authorize notice on thinner records.[28]

## II.  DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER *HOFFMAN-LAROCHE*.

It is appropriate for courts in collective actions to order the discovery of names and addresses of potential collective members.  *Lee*, 236 F.R.D. at 202 (*citing Hoffman-La Roche*, 493 U.S. at 171).  *See Fasanelli*, 516 F. Supp. 2d at 323-4 (ordering discovery of names and addresses of potential opt-ins); *Anglada v. Linen's 'N Things, No. 06-cv-12901,* 2007 WL 1552511, at *12, (S.D.N.Y. April 26, 2007) (same); *Cuzco,* 477 F. Supp. 2d at 637 (same).

Plaintiffs therefore request that, in addition to entering an order granting

---

[27]  Courts in this district and elsewhere have authorized notice where plaintiffs alleged similar tip credit violations.  *See, e.g.,Dominguez v. Don Pedro Rest.,* No. 2:06 cv 241, 2007 WL 271567 (N.D. Ind. Jan. 25, 2007); *Bursell v. Tommy's Seafood Steakhouse,* Civ. No. H-06-0386, 2006 WL 3227334 (S.D. Tex. Nov. 3, 2006); *Zhao,* 2001 WL 845000; *Realite,* 7 F. Supp. 2d 303.

[28]  *See, e.g., Masson,* 2005 WL 2000133, at *14 (affidavits from three named plaintiffs); *Sipas v. Sammy's Fishbox, Inc.,* No. 05-CV-10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditional certification granted based on three affidavits and the complaint); *Legrand v. Educ. Mgmt. Corp.,* No. 03-9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs who were told by management of nationwide company that employees were required to work over 40 hours per week without overtime pay); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Zhao,* 2001 WL 845000, **2-3 (one affidavit based on Plaintiff's "best knowledge"); *Schwed v. General Elec. Co.,* 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case); *Young,* 229 F.R.D. at 55 (one affidavit sufficient for conditional certification when potential opt-ins all had same job and were all classified as exempt at over 108 facilities in 21 states); *Mazur,* 2005 WL 3240472 at *4 (three affidavits sufficient for notice to employees in nine job classifications, who worked for four different corporations).

conditional certification and approving Plaintiffs' proposed notice, this Court also order

Defendants to produce to Plaintiffs the following within ten days of its order:  A list, in

electronic format, of all persons employed by Park Avenue as "Covered Employees"

from three years prior to the entry of an order to the present including: name, last known

home address, home telephone number, and employee number.

### III.    THE PROPOSED NOTICE IS FAIR AND ADEQUATE.

Attached as Exhibit A hereto is Plaintiffs' proposed judicial notice.  Plaintiffs'

proposed notice provides clear instructions on how to opt-in, and accurately states the

prohibition against retaliation or discrimination for participation in an FLSA action.[29]  As

required, it is "timely, accurate, and informative."  *See Hoffmann-La Roche*, 493 U.S. at

172.  It is carefully drafted to mirror notice forms that this Court has approved in

previous cases.  *See Fasanelli*, 516 F. Supp. 2d at 323-4.  The proposed notice achieves

the goal of providing potential opt-ins with accurate and timely notice concerning the

pendency of the collective action, and should be adopted.

---

[29] Retaliation for filing a complaint against an employer is prohibited by law.  29 U.S.C. § 215(a)(3); *Reich v. Davis*, 50 F.3d 962, 964-965 (11th Cir. 1995).  Guarding against retaliation is "critical to the entire enforcement scheme of the federal wage and hour law."  *Centeno-Bernuy v. Perry,* 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003) (citing *Mitchell v. DeMaria Jewelry, Inc.,* 361 U.S. 288 (1960)).

## **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant

their motion, thereby conditionally certifying this case as a FLSA class action under 29

U.S.C. § 216(b) and authorizing dissemination of notice to the prospective collective

action members.

Dated:  New York, New York
      February 21, 2008          Respectfully submitted,

                                     JOSEPH & HERZFELD LLP


                                     By: /s/ D. Maimon Kirschenbaum
                                        D. Maimon Kirschenbaum (DK-2338)

                                     Charles E. Joseph (CJ-9442)
                                     757 Third Avenue
                                     25th Floor
                                     New York, NY 10017
                                     Tel: (212) 688-5640
                                     Fax: (212) 688-2548


                                     *Attorneys for Plaintiffs, proposed collective*
                                     *action members and proposed class*

16

NOTICE OF PENDENCY OF FLSA LAWSUIT

From:     Joseph & Herzfeld, LLP, Attorneys at Law


To:       All current and former tipped employees of Park Avenue Restaurant,
          Defendants Fourth Walls Restaurant LLC and/or Smith & Wollensky
          Group Inc. ("Defendants" or " Park Avenue") who were employed by
          Defendants in any tipped position, including but not limited to
          captains, front waiters, back waiters, servers, runners, and/or busboys
          ("Covered Employees") within the last three years.

Re:       Collective action lawsuit against Defendants under the federal Fair
          Labors Standards Act-- Shahriar et al v. Smith & Wollensky
          Restaurant Group, Inc. et al, United States District Court, Southern
          District of New York, No. 08-cv00057 (MGC)


The purpose of this Notice is to advise you of a lawsuit under the federal Fair Labor
Standards Act that has been filed against Defendants and to advise you of the legal rights
you have in connection with that suit.

1.  DESCRIPTION OF THE LAWSUIT.

The Named Plaintiffs, on behalf of themselves and all others similarly situated, filed this
lawsuit against Defendants on January 4, 2008. The law firm of Joseph & Herzfeld, LLP
represents the plaintiffs in this lawsuit.

The claims in this lawsuit made under the federal Fair Labor Standards Act allege
primarily that Defendants: (1) illegally retained portions of employees' tips by requiring
them to share tips with non-tipped employees, such as expediters, silver/glass polishers
and coffee makers, and managerial employees; and (2) failed to pay employees the
federal minimum (and or overtime) wage for all hours worked.

2.  YOUR RIGHT TO MAKE A CLAIM IN THIS LAWSUIT.

If at any time within the last three years, you worked as a tipped employee with
Defendants and you believe that you were subject to any of the illegal practices described
above, you have the right to assert claims under the Fair Labor Standards Act ("FLSA")
in this lawsuit.

To assert the FLSA claim you must sign a written Consent to be a "party-plaintiff" in the
lawsuit. This form will be filed in the Court.  It is entirely your own voluntary decision
whether or not to sign and file the consent. Please be advised that, if you do file the
consent and thus make an FLSA claim, it is against the law for Defendants to retaliate
against you for doing so.

3.   <u>HOW TO MAKE A CLAIM IN THIS LAWSUIT.</u>

Attached to this Notice is a form entitled "Consent to Make a Claim in Lawsuit under Federal Fair Labor Standards Act (FLSA)." In order to make an FLSA claim in the lawsuit, fill out the form, sign it, and fax, mail or overnight it to:

D. Maimon Kirschenbaum
Joseph & Herzfeld, LLP
Attorneys at Law
757 Third Avenue, Suite 2500
New York, NY 10017
Phone: (212) 688-5640
Fax: (212) 688-2548
Email: maimon@jhllp.com

If you sign and mail the form, it will be filed with the court and you will become a "party plaintiff." Thus you will become a client of the above attorneys, who represent the plaintiffs in the lawsuit.   The attorneys' fee arrangement for this case provides that Plaintiffs' counsel are handling this matter on a contingency basis, *i.e.,* that the attorneys' fees and costs will be determined on a percentage basis based on the recovery on behalf of Plaintiffs and that Plaintiffs will not be responsible for fees and/or costs if there is no recovery for the Plaintiffs.   The agreement further provides that at the conclusion of the case, Plaintiffs' counsel will make an application to the Court for the recovery of fees and costs, that the Court has discretion of the amount of fees to award, and that the fees may be as much as 33% of any settlement fund or judgment, after the deduction of costs and expenses.  Also enclosed is a form entitled "Client Information." It is to enable these attorneys to contact you. To furnish this information to the attorneys, fill out the form and mail it to the attorneys at the above address.

For your convenience, a self-addressed, postage paid envelope is enclosed. If you have any questions with respect to this suit, you may call Maimon Kirschenbaum at Joseph & Herzfeld, LLP, phone number (212) 688-5640.

4.   <u>THE LEGAL EFFECT OF FILING OR NOT FILING THE CONSENT FORM.</u>

If you do not file a consent form, you will not receive any money or other relief for FLSA claims in the lawsuit. If you do file a consent form, you will be bound by the judgment of the court on all FLSA issues in the case, win or lose.

5.    ALHOUGH THE COURT HAS APPROVED THE SENDING OF THIS NOTICE, THE COURT EXPRESSES NO OPINION ON THE MERITS OF THIS LAWSUIT.

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

Dated: _____

<div style="margin-left:40%">

D. Maimon Kirschenbaum (DK-2338)
Joseph & Herzfeld LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

</div>

Client Information

Name: _____

Telephone Number(s): _____

_____

D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA*
*Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
**SALIM SHAHRIAR, MUHAMMAD ISLAM,**
**AND MARY HARVEY on behalf of**                      INDEX NO:  08-cv-00057
**themselves and all others similarly situated,**

                    **Plaintiffs,**

            **v.**

**SMITH & WOLLENSKY RESTAURANT**
**GROUP, INC. d/b/a PARK AVENUE**
**RESTAURANT AND FOURTH WALLS**
**RESTAURANTS LLC, d/b/a PARK**
**AVENUE RESTAURANT,**

                    **Defendants.**
--------------------------------------------------------x

### DECLARATION OF ANDREW MELLOR

I, Andrew Mellor, under penalty of perjury, affirm as follows:

1.      I was employed by Defendants as a captain at Park Avenue Café from

December 1997 until July 2007, and I am an opt-in Plaintiff in this lawsuit.

2.      Throughout my employment at Park Avenue, I was paid less than the

federal minimum wage.

3.    When I began working for Park Avenue, each individual server/captain was required to share his tips with several employees, including runners, coffee makers, silverware polishers and expediters.

4.    The coffee makers with whom we shared tips never communicated with customers or provided direct customer service.  Their job duties were simply to make coffee.   These employees were listed under the "coffee" category in the tip-out sheets.

5.    Similarly, the expediters with whom we shared tips primarily called food orders into the kitchen, and the silver/glass polishers polished silver and glass.  None of these employees ever communicated with customers or provided direct customer service.

6.    Expediters were listed under the "runner" categories in the tip-out sheets, and silver/glass polishers under "silver."

7.    In the middle of 2007, Sergio Pasentez became an assistant general manager at Park Avenue.

8.    After Mr. Pasentez became assistant GM, Park Avenue required employees to participate in a tip-pool.

9.    I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

10.    Park Avenue continued to require us to share tips with silver polishers, expediters and coffee makers by placing them to participate in the tip-pool

11.    After the tip-pool was imposed on us, Park Avenue never provided us with any accounting regarding how tips were distributed.  They simply handed us our envelopes with money the following day.  Accordingly, I have no way of knowing whether all of the tip money received on any given night was distributed into the tip-pool.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated:  New York, New York
        February 12, 2008

Andrew Mellor

D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA*
*Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**SALIM SHAHRIAR, MUHAMMAD ISLAM,**
**AND MARY HARVEY on behalf of**          INDEX NO: 08-cv-00057
**themselves and all others similarly situated,**

                  **Plaintiffs,**

      **v.**

**SMITH & WOLLENSKY RESTAURANT**
**GROUP, INC. d/b/a PARK AVENUE**
**RESTAURANT AND FOURTH WALLS**
**RESTAURANTS LLC, d/b/a PARK**
**AVENUE RESTAURANT,**

              **Defendants.**
-----------------------------------------------------------x

## DECLARATION OF MARY HARVEY

    I, Mary Harvey, under penalty of perjury, affirm as follows:

    1.    I was employed by Defendants as a waitress at Park Avenue Café within

the last three years.

    2.    Throughout my employment at Park Avenue, I was paid less than the

federal minimum wage.

3.      When I began working for Park Avenue, each individual server was required to share her tips with several employees, including runners, coffee makers, silverware polishers and expediters.

4.      The coffee makers with whom we shared tips never communicated with customers or provided direct customer service.  Their job duties were simply to make coffee.   These employees were listed under the "coffee" category in the tip-out sheets.

5.      The coffee makers with whom I was required to share tips included Sayid Hussain and Roy Nantu.

6.      Similarly, the expediters with whom we shared tips primarily called food orders into the kitchen, and the silver/glass polishers polished silver and glass.  None of these employees ever communicated with customers or provided direct customer service.

7.      The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

8.      The expediters with whom I was required to share tips included Saha (last name unknown), Fausto Gomez, and Carlos Fernandez.

9.      To the best of my recollection, expediters were listed under the "runner" categories in the tip-out sheets, and silver/glass polishers under "dish."

10.      Attached as Exhibit A is a copy of a tip-out sheet used in 2001.  This tip-out sheet reflects the tip-out procedures at Park Avenue until the middle of 2007, when Park Avenue began to pool our tips.  The categories described above (runners, dish and coffee) are reflected in the attached tip-out sheets.

11.      In the middle of 2007 Santiago Pasentez became an assistant general manager at Park Avenue.

2

12.    Around this time, Park Avenue required employees to participate in a tip-pool.

13.    I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

14.    Park Avenue continued to require us to share tips with silver polishers, expediters and coffee makers by placing them in the tip-pool.

15.    Attached as Exhibit B is a copy of a tip-pool sheet from a night that I worked at Park Avenue. This tip-pool sheet shows that Park Avenue illegally required us to share tips with Mr. Fernandez, Mr. Hussain, Mr. Bhuit and Mr. Nantu.

16.    After the implementation of the tip-pool at Park Avenue, Park Avenue required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

17.    For example, Roger Moler, a manager at the restaurant and referred to by all employees as a manager, participated in the tip-pool.

18.    In an attempt to conceal Roger's participation in the tip-pool, his share is reflected in the "Barista" section of the tip-out sheet, under the initials 'RM' instead of his full name.

19.    Roger's job duties were to manage the restaurant and the bar, and he was introduced to us as a manager.

20.    Roger frequently closed the restaurant, and we needed Roger's permission to leave the restaurant.

21.    I witnessed employees disciplined by Roger.

3

22.    Roger's primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) verifying the money reports at the end of each night, (f) sending employees home early if necessary, and (g) selling wine.

23.    Roger was frequently the most senior employee present in the restaurant.

24.    When a customer asked to speak to a manager, they were often referred to Roger.

25.    Roger had special cards or access codes with which he could access the computer system to perform managerial functions such as changing the prices of items, comping items, voiding checks, reopening closed checks, reauthorizing checks, etc.

26.    Since the tip-pool was imposed on us, Park Avenue never provided us with any accounting regarding how tips were distributed.  They simply hand us our envelopes with money the following day.  Accordingly, I have no way of knowing whether all of the tip money received on any given night is distributed into the tip-pool.

27.    When I asked for an accounting of the tip-appropriation, I was told by management that the information is confidential.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated:  New York, New York
        February 20, 2008

Mary Harvey

4

**EXHIBIT A**



# EXHIBIT B

**Park Avenue**
Dining Room Tip Sheet

DINNER
Saturday
October 20, 2007

Points

| Captains | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Andy Rankin | 6 | $24.62 | $235.06 | $259.68 |
| 2 | Ariel Ojeda | 6 | $24.62 | $235.06 | $259.68 |
| 3 | Jeff Fritz | | $0.00 | $0.00 | $0.00 |
| 4 | Larry Sayward | | $0.00 | $0.00 | $0.00 |
| 5 | Liz Laufer | 6 | $24.62 | $235.06 | $259.68 |
| 6 | Michael Naranjo | 6 | $24.62 | $235.06 | $259.68 |
| 7 | Remy Pilly | | $0.00 | $0.00 | $0.00 |
| 8 | Sal Shahiar | | $0.00 | $0.00 | $0.00 |
| 9 | Sam Islam | | $0.00 | $0.00 | $0.00 |
| 10 | Quincy Loring | 6 | $24.62 | $235.06 | $259.68 |
| 11 | Bobbi Kim | 6 | $24.62 | $235.06 | $259.68 |
| 12 | Thom Cyburt | | $0.00 | $0.00 | $0.00 |
| 13 | Sean Montgomery | 6 | $24.62 | $235.06 | $259.68 |
| 14 | Jordan Reeves | | $0.00 | $0.00 | $0.00 |
| 15 | Suzanne Stone | 6 | $24.62 | $235.06 | $259.68 |

| Bartenders | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | 0 | | $0.00 | $0.00 | $0.00 |
| 2 | 0 | | $0.00 | $0.00 | $0.00 |
| 3 | 0 | | $0.00 | $0.00 | $0.00 |
| 4 | Sorina Max | 6 | $24.62 | $235.06 | $259.68 |
| 5 | Melissa Bart | | $0.00 | $0.00 | $0.00 |
| 6 | Tessa | | $0.00 | $0.00 | $0.00 |
| 7 | x | | $0.00 | $0.00 | $0.00 |
| 8 | x | | $0.00 | $0.00 | $0.00 |
| 9 | 0 | | $0.00 | $0.00 | $0.00 |

| Waiters / Runners | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Carlos Torres | 4.5 | $18.46 | $176.29 | $194.76 |
| 2 | David Cazares | 4.5 | $18.46 | $176.29 | $194.76 |
| 3 | Emin Gavrilov | 4.5 | $18.46 | $176.29 | $194.76 |
| 4 | Mahbub Malik | 4.5 | $18.46 | $176.29 | $194.76 |
| 5 | Mr.B Sarker | | $0.00 | $0.00 | $0.00 |
| 6 | Ramiro Valdez | 4.5 | $18.46 | $176.29 | $194.76 |
| 7 | Shuhel Ahmed | 4.5 | $18.46 | $176.29 | $194.76 |
| 8 | Vincent Herrera | 4.5 | $18.46 | $176.29 | $194.76 |
| 9 | Olisian Xhakollanpi | | $0.00 | $0.00 | $0.00 |
| 10 | Feliciano Hernandez | 4.5 | $18.46 | $176.29 | $194.76 |
| 11 | JD Naranjo | | $0.00 | $0.00 | $0.00 |
| 12 | Valentino Flores | | $0.00 | $0.00 | $0.00 |
| 13 | Rajib Das | 2 | $8.21 | $78.35 | $86.56 |
| 14 | 0 | | $0.00 | $0.00 | $0.00 |
| 15 | 0 | | $0.00 | $0.00 | $0.00 |
| 16 | Saha Jayanta | | $0.00 | $0.00 | $0.00 |
| 17 | Carlos Fernandez | 4.5 | $18.46 | $176.29 | $194.76 |
| 18 | 0 | | $0.00 | $0.00 | $0.00 |
| 19 | Adrian Amigon | 4 | $16.41 | $156.71 | $173.12 |
| 20 | Enamul Shakur | 4 | $16.41 | $156.71 | $173.12 |
| 21 | Islam Mohamed | | $0.00 | $0.00 | $0.00 |
| 22 | Lipton Barman | | $0.00 | $0.00 | $0.00 |
| 23 | Saruk Miah | 4 | $16.41 | $156.71 | $173.12 |
| 24 | Mr T | 4 | $16.41 | $156.71 | $173.12 |
| 25 | 0 | | $0.00 | $0.00 | $0.00 |
| 26 | 0 | | $0.00 | $0.00 | $0.00 |
| 27 | David Ward | 6 | $24.62 | $235.06 | $259.68 |
| 28 | 0 | | $0.00 | $0.00 | $0.00 |
| 29 | Mary Harvey | 4 | $16.41 | $156.71 | $173.12 |
| 30 | Kendra Treichler | 4 | $16.41 | $156.71 | $173.12 |
| 31 | 0 | | $0.00 | $0.00 | $0.00 |

| Barista | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Pebe Bhuit | | $0.00 | $0.00 | $0.00 |
| 2 | Roy Nantu | 2.5 | $10.26 | $97.94 | $108.20 |
| 3 | Syed Hussain | 2.5 | $10.26 | $97.94 | $108.20 |
| 4 | Kanti | | $0.00 | $0.00 | $0.00 |
| 5 | 0 | | $0.00 | $0.00 | $0.00 |
| 6 | RM | 4 | $16.41 | $156.71 | $173.12 |

D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA
Collective Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**SALIM SHAHRIAR, MUHAMMAD ISLAM,
AND MARY HARVEY on behalf of
themselves and all others similarly situated,**              INDEX NO:  08-cv-00057

            **Plaintiffs,**

    **v.**

**SMITH & WOLLENSKY RESTAURANT
GROUP, INC. d/b/a PARK AVENUE
RESTAURANT AND FOURTH WALLS
RESTAURANTS LLC, d/b/a PARK
AVENUE RESTAURANT,**

            **Defendants.**
------------------------------------------------------------x

## DECLARATION OF MASUD AHAD

I, Masud Ahad, under penalty of perjury, affirm as follows:

1.      I was employed by Defendants as a captain at Park Avenue Café within the last three years, and I am an opt-in Plaintiff in this lawsuit.

2.      Throughout my employment at Park Avenue, I was paid less than the federal minimum wage.

3.      When I began working at Park Avenue, I was informed by Santiago Pasentez, manager, that the restaurant requires tipped employees to pool their tips.

4.      I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

5.      Throughout my employment at Park Avenue, Park Avenue required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

6.      For example, Roger (last name unknown), a manager at the restaurant and referred to by all employees as a manager, participated in the tip-pool.

7.      In an attempt to conceal Roger's participation in the tip-pool, his share is reflected in the "Barista" section of the tip-out sheet, under the initials 'RM' instead of his full name.

8.      Roger's job duties were to manage the restaurant and the bar, and he was introduced to us as a manager.

9.      Roger frequently closed the restaurant, and we needed Roger's permission to leave the restaurant.

10.     I witnessed Roger interview employees for hire.

11.     I was written up and disciplined by Roger.

12.     Roger's primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) verifying the money reports at the end of each night, and (f) sending employees home early.

13.     Roger was frequently the most senior Park Avenue member present in the restaurant.

14.     When for any given reason a charge was to be 'comped', *i.e.,* voided, Roger had authority and routinely authorized these voids for the servers.

15.    When a customer asked to speak to a manager, they were often referred to Roger.

16.    Roger had authority to send free meals or items to customers.

17.    Roger had special cards or access codes with which he could access the computer system to perform managerial functions such as changing the prices of items, comping items, voiding checks, reopening closed checks, reauthorizing checks, etc.

18.    Syed Hussain and Roy Nantu were coffee makers that never communicated with customers or provided direct customer service. Their job duties were simply to make coffee.

19.    Mr. Hussain and Mr. Nantu were illegally allowed by Park Avenue to participate in the tip-pool.

20.    Peppe Bhuit was a Park Avenu eemployee whose primary job duties were to polish silver and glass, and he never communicated with customers or provided direct customer service.

21.    Peppe Bhuit was illegally allowed by Park Avenue to participate in the tip-pool.

22.    In addition, there were two expediters that were part of the tip-pool each night. Their primary duties were to call the orders into the kitchen, and they never communicated with customers or provided direct customer service.

23.    Park Avenue never provided with any accounting regarding how tips were distributed. They simply handed our envelopes with money at the end of the night. Accordingly, I have no way of knowing whether all of the tip money received on any given night was distributed into the tip-pool.

3

24.    Attached as Exhibit A is a tip-out report reflecting Mr. Bhuit and Mr.

Nantu's participation in the tip-pool.

I affirm, under penalty of perjury, that the above and foregoing information is true

and correct.

Dated:  New York, New York
        February 12, 2008

_____
Masud Ahad

4

**EXHIBIT A**

**Park Avenue**
Dining Room Tip Sheet

Points

| Captains | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Andy Rankin | | $0.00 | $0.00 | $0.00 |
| 2 | Ariel Ojeda | 6 | $7.13 | $246.02 | $253.15 |
| 3 | Jeff Fritz | 6 | $7.13 | $246.02 | $253.15 |
| 4 | Larry Sayward | | $0.00 | $0.00 | $0.00 |
| 5 | ✗ Liz Laufer | | $0.00 | $0.00 | $0.00 |
| 6 | Michael Naranjo | | $0.00 | $0.00 | $0.00 |
| 7 | Remy Pilly | 6 | $7.13 | $246.02 | $253.15 |
| 8 | ✗ Sal Shahiar | 6 | $7.13 | $246.02 | $253.15 |
| 9 | ✗ Sam Islam | | $0.00 | $0.00 | $0.00 |
| 10 | Quincy Loring | 5 | $5.95 | $205.01 | $210.96 |
| 11 | Bobbi Kim | | $0.00 | $0.00 | $0.00 |
| 12 | Thom Cyburt | 6 | $7.13 | $246.02 | $253.15 |
| 13 | Sean Montgomery | 6 | $7.13 | $246.02 | $253.15 |
| 14 | Jordan Reeves | | $0.00 | $0.00 | $0.00 |
| 15 | Suzanne Stone | | $0.00 | $0.00 | $0.00 |
| 16 | Danny Walton | | $0.00 | $0.00 | $0.00 |
| 17 | ✗ Raymon Taylor | | $0.00 | $0.00 | $0.00 |
| 18 | Masud Ahad | 6 | $7.13 | $246.02 | $253.15 |
| 19 | 0 | | $0.00 | $0.00 | $0.00 |
| 20 | 0 | | $0.00 | $0.00 | $0.00 |
| 21 | 0 | | $0.00 | $0.00 | $0.00 |

| Bartenders | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | 0 | | $0.00 | $0.00 | $0.00 |
| 2 | 0 | | $0.00 | $0.00 | $0.00 |
| 3 | 0 | | $0.00 | $0.00 | $0.00 |
| 4 | Sorina Max | | $0.00 | $0.00 | $0.00 |
| 5 | Melissa Bart | | $0.00 | $0.00 | $0.00 |
| 6 | Tessa | | $0.00 | $0.00 | $0.00 |
| 7 | Chingiz | 6 | $7.13 | $246.02 | $253.15 |
| 8 | x | | $0.00 | $0.00 | $0.00 |
| 9 | 0 | | $0.00 | $0.00 | $0.00 |

| Waiters / Runners | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Carlos Torres | 4.5 | $5.35 | $184.51 | $189.86 |
| 2 | David Cazares | 4.5 | $5.35 | $184.51 | $189.86 |
| 3 | Emin Gavrilov | 4.5 | $5.35 | $184.51 | $189.86 |
| 4 | Mahbub Malik | 4.5 | $5.35 | $184.51 | $189.86 |
| 5 | Mr.B Sarker | 4.5 | $5.35 | $184.51 | $189.86 |
| 6 | Ramiro Valdez | 4.5 | $5.35 | $184.51 | $189.86 |
| 7 | Shuhel Ahmed | 4.5 | $5.35 | $184.51 | $189.86 |
| 8 | Vincent Herrera | 4.5 | $5.35 | $184.51 | $189.86 |
| 9 | Feliciano Hernandez | 4.5 | $5.35 | $184.51 | $189.86 |
| 10 | Daniel Herrera | 4.5 | $5.35 | $184.51 | $189.86 |
| 11 | Valentino Flores | 4.5 | $5.35 | $184.51 | $189.86 |
| 12 | Chirstian Aspajo | 4.5 | $5.35 | $184.51 | $189.86 |
| 13 | JD Naranjo | 2 | $2.38 | $82.01 | $84.38 |
| 14 | 0 | | $0.00 | $0.00 | $0.00 |
| 15 | 0 | | $0.00 | $0.00 | $0.00 |
| 16 | Seha Jayanta | | $0.00 | $0.00 | $0.00 |
| 17 | Carlos Fernandez | 4.5 | $5.35 | $184.51 | $189.86 |
| 18 | 0 | | $0.00 | $0.00 | $0.00 |
| 19 | Adrian Amigon | 4 | $4.76 | $164.01 | $168.77 |
| 20 | Enamul Shakur | 4 | $4.76 | $164.01 | $168.77 |
| 21 | Javier Osorio | 4 | $4.76 | $164.01 | $168.77 |
| 22 | Lipton Barman | 4 | $4.76 | $164.01 | $168.77 |
| 23 | Saruk Miah | | $0.00 | $0.00 | $0.00 |
| 24 | Mr T | 4 | $4.76 | $164.01 | $168.77 |
| 25 | 0 | | $0.00 | $0.00 | $0.00 |
| 26 | 0 | | $0.00 | $0.00 | $0.00 |
| 27 | David Ward | 6 | $7.13 | $246.02 | $253.15 |
| 28 | 0 | | $0.00 | $0.00 | $0.00 |
| 29 | Mary Harvey | 4.5 | $5.35 | $184.51 | $189.86 |
| 30 | Kendra Treichler | 4.5 | $5.35 | $184.51 | $189.86 |
| 31 | 0 | | $0.00 | $0.00 | $0.00 |

| Barista | | Points | Cash Tips | C/C Tips | Tip Total |
|---|---|---|---|---|---|
| 1 | Little "Peppe" | 2 | $2.38 | $82.01 | $84.38 |
| 2 | Roy Nantu | 2.5 | $2.97 | $102.51 | $105.48 |

D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA
Collective Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

**SALIM SHAHRIAR, MUHAMMAD ISLAM,
AND MARY HARVEY on behalf of
themselves and all others similarly situated,**          INDEX NO:  08-cv-00057

                    **Plaintiffs,**

        **v.**

**SMITH & WOLLENSKY RESTAURANT
GROUP, INC. d/b/a PARK AVENUE
RESTAURANT AND FOURTH WALLS
RESTAURANTS LLC, d/b/a PARK
AVENUE RESTAURANT,**

                    **Defendants.**
-----------------------------------------------------------x

## DECLARATION OF MUHAMMAD iSLAM

        I, Muhammad Islam, under penalty of perjury, affirm as follows:

        1.        I was employed by Defendants as a waiter and then a captain at Park

Avenue Café within the last three years.

        2.        Throughout my employment at Park Avenue, I was paid less than the

federal minimum wage.

3.      When I began working for Park Avenue, each individual server/captain was required to share his tips with several employees, including runners, coffee makers, silverware polishers and expediters.

4.      The coffee makers with whom we shared tips never communicated with customers or provided direct customer service.  Their job duties were simply to make coffee.   These employees were listed under the "coffee" category in the tip-out sheets.

5.      The coffee makers with whom I was required to share tips included Shrukh (last name unknown) (subsequently to runner), Sayid Hussain and Roy Nantu.

6.      Similarly, the expediters with whom we shared tips primarily called food orders into the kitchen, and the silver/glass polishers polished silver and glass.  None of these employees ever communicated with customers or provided direct customer service.

7.      The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

8.      The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

9.      The expediters with whom I was required to share tips included Saha (last name unknown), Fausto (last name unknown), and Carlos (last name unknown).

10.     To the best of my recollection, expediters were listed under the "runner" categories in the tip-out sheets, and silver/glass polishers under "silver."

11.     In the middle of 2007 Santiago Pasentez became a service manager at Park Avenue.

12.     After Mr. Pasentez became service manager, Park Avenue required employees to participate in a tip-pool.

2

13.   I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

14.   Mr. Pasentez made clear that he was in control of the tip-pool, and had no say in any detail of the tip-pool.

15.   Park Avenue continued to require us to share tips with silver polishers, expediters and coffee makers by placing them in the tip-pool.

16.   After the implementation of the tip-pool at Park Avenue, Park Avenue required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

17.   For example, Roger Moler, a manager at the restaurant and referred to by all employees as a manager, participated in the tip-pool.

18.   In an attempt to conceal Mr. Moler's participation in the tip-pool, his share is reflected in the "Barista" section of the tip-out sheet, under the initials 'RM' instead of his full name.

19.   Mr. Moler's job duties were to manage the restaurant and the bar, and he was introduced to us as a manager.

20.   Mr. Moler frequently closed the restaurant, and we needed Mr. Moler's permission to leave the restaurant.

21.   I witnessed Mr. Moler interview employees for hire.

22.   I was witnessed employees disciplined by Mr. Moler.

23.   Mr. Moler's primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily

meetings with servers in preparation for each shift, (e) verifying the money reports at the end of the night, and (f) sending employees home early if necessary.

24.    Mr. Moler was frequently the most senior employee present in the restaurant.

25.    When for any given reason a charge was to be 'comped', *i.e.,* voided, Mr. Moler had authority and routinely authorized these voids for the servers.

26.    When a customer asked to speak to a manager, they were often referred to Mr. Moler.

27.    Mr. Moler had special cards or access codes with which he could access the computer system to perform managerial functions such as changing the prices of items, comping items, voiding checks, reopening closed checks, reauthorizing checks, etc.

28.    After the tip-pool was imposed on us, Park Avenue never provided us with any accounting regarding how tips were distributed. They simply handed us our envelopes with money the following day. Accordingly, I have no way of knowing whether all of the tip money received on any given night was distributed into the tip-pool.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated:  New York, New York
       February 13, 2008

Mohammad Islam

4

D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA
Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**SALIM SHAHRIAR, MUHAMMAD ISLAM,**
**AND MARY HARVEY on behalf of**        **INDEX NO:  08-cv-00057**
**themselves and all others similarly situated,**

                              **Plaintiffs,**

          **v.**

**SMITH & WOLLENSKY RESTAURANT**
**GROUP, INC. d/b/a PARK AVENUE**
**RESTAURANT AND FOURTH WALLS**
**RESTAURANTS LLC, d/b/a PARK**
**AVENUE RESTAURANT,**

                    **Defendants.**
-------------------------------------------------------x


<u>**DECLARATION OF SALIM SHARIAR**</u>

I, Salim Shariar, under penalty of perjury, affirm as follows:

1.      I was employed by Defendants as a waiter and then a captain at Park

Avenue Café within the last three years.

2.      Throughout my employment at Park Avenue, I was paid less than the

federal minimum wage.

3.      When I began working for Park Avenue, each individual server/captain was required to share his tips with several employees, including runners, coffee makers, silverware polishers and expediters.

4.      The coffee makers with whom we shared tips never communicated with customers or provided direct customer service. Their job duties were simply to make coffee. These employees were listed under the "coffee" category in the tip-out sheets.

5.      The coffee makers with whom I was required to share tips included Sayid Hussain and Roy Nantu.

6.      Similarly, the expediters with whom we shared tips primarily called food orders into the kitchen, and the silver/glass polishers polished silver and glass. None of these employees ever communicated with customers or provided direct customer service.

7.      The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

8.      The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

9.      The expediters with whom I was required to share tips included Saha (last name unknown), Fausto (last name unknown), and Carlos (last name unknown).

10.     To the best of my recollection, expediters were listed under the "runner" categories in the tip-out sheets, and silver/glass polishers under "coffee."

11.     In the middle of 2007 Santiago Pasentez became an assistant general manager at Park Avenue.

12.     After Mr. Pasentez became assistant GM, Park Avenue required employees to participate in a tip-pool.

13.     I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

14.     Park Avenue continued to require us to share tips with silver polishers, expediters and coffee makers by placing them in the tip-pool.

15.     After the implementation of the tip-pool at Park Avenue, Park Avenue required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

16.     For example, Roger Moler, a manager at the restaurant and referred to by all employees as a manager, participated in the tip-pool.  In an attempt to conceal Roger's participation in the tip-pool, his share is reflected in the "Barista" section of the tip-out sheet, under the initials 'RM' instead of his full name.

17.     Roger's job duties were to manage the restaurant and the bar, and he was introduced to us as a manager.

18.     Roger frequently closed the restaurant, and we needed Roger's permission to leave the restaurant.

19.     I witnessed Roger interview employees for hire.

20.     I was witness employees disciplined by Roger.

21.     Roger's primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) verifying the money reports at the end of each night, and (f) sending employees home early if necessary.

22.     Roger was frequently the most senior member of Park Avenue present in the restaurant.

24.    When for any given reason a charge was to be 'comped', *i.e.,* voided, Roger had authority and routinely authorized these voids for the servers.

25.    When a customer asked to speak to a manager, they were often referred to Roger.

26.    Roger had special cards or access codes with which he could access the computer system to perform managerial functions such as changing the prices of items, comping items, voiding checks, reopening closed checks, reauthorizing checks, etc.

27.    After the tip-pool was imposed on us, Park Avenue never provided us with any accounting regarding how tips were distributed. They simply handed us our envelopes with money the following day. Accordingly, I have no way of knowing whether all of the tip money received on any given night was distributed into the tip-pool.

28.    Attached as Exhibit A is a copy of a tip-pool sheet for a night that I worked at Park Avenue, and reflects the illegal participation of several of the above mentioned employees.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated:  New York, New York
        February 13, 2008

_____
Salim Shariar

4

# EXHIBIT A

**Park Avenue Summer**
Dining Room Tip Sheet

Points

DINNER
Sunday
October 21, 2007

### Captains

| # | Name | Points | Cash Tips | CC Tips | Tip Total |
|---|------|--------|-----------|---------|-----------|
| 1 | Andy Rankin | 6 | $3.02 | $130.21 | $133.22 |
| 2 | Ariel Ojeda | | $0.00 | $0.00 | $0.00 |
| 3 | Jeff Fritz | | $0.00 | $0.00 | $0.00 |
| 4 | Larry Sayward | | $0.00 | $0.00 | $0.00 |
| 5 | Liz Laufer | | $0.00 | $0.00 | $0.00 |
| 6 | Michael Naranjo | | $0.00 | $0.00 | $0.00 |
| 7 | Remy Pilly | | $0.00 | $0.00 | $0.00 |
| 8 | Sal Shahkar | 5 | $2.51 | $108.51 | $111.02 |
| 9 | Sam Islam | | $0.00 | $0.00 | $0.00 |
| 10 | Quincy Loring | 6 | $3.02 | $130.21 | $133.22 |
| 11 | Bobbi Kim | 6 | $3.02 | $130.21 | $133.22 |
| 12 | Thom Cyburt | 6 | $3.02 | $130.21 | $133.22 |
| 13 | Sean Montgomery | 6 | $3.02 | $130.21 | $133.22 |
| 14 | Jordan Reeves | | $0.00 | $0.00 | $0.00 |
| 15 | Suzanne Stone | 6 | $3.02 | $130.21 | $133.22 |

### Bartenders

| # | Name | Points | Cash Tips | CC Tips | Tip Total |
|---|------|--------|-----------|---------|-----------|
| 1 | 0 | | $0.00 | $0.00 | $0.00 |
| 2 | 0 | | $0.00 | $0.00 | $0.00 |
| 3 | 0 | | $0.00 | $0.00 | $0.00 |
| 4 | Sorina Max | | $0.00 | $0.00 | $0.00 |
| 5 | Melissa Bart | | $0.00 | $0.00 | $0.00 |
| 6 | Tessa | 6 | $3.02 | $130.21 | $133.22 |
| 7 | x | | $0.00 | $0.00 | $0.00 |
| 8 | x | | $0.00 | $0.00 | $0.00 |
| 9 | 0 | | $0.00 | $0.00 | $0.00 |

### Waiters / Runners

| # | Name | Points | Cash Tips | CC Tips | Tip Total |
|---|------|--------|-----------|---------|-----------|
| 1 | Carlos Torres | | $0.00 | $0.00 | $0.00 |
| 2 | David Cazares | 4.5 | $2.26 | $97.66 | $99.92 |
| 3 | Emin Gavrilov | 4.5 | $2.26 | $97.66 | $99.92 |
| 4 | Mahbub Malik | 4.5 | $2.26 | $97.66 | $99.92 |
| 5 | Mr.B Sarker | | $0.00 | $0.00 | $0.00 |
| 6 | Ramiro Valdez | | $0.00 | $0.00 | $0.00 |
| 7 | Shuhel Ahmed | 4.5 | $2.26 | $97.66 | $99.92 |
| 8 | Vincent Herrera | | $0.00 | $0.00 | $0.00 |
| 9 | Oltslan Xhakollangi | 4.5 | $2.26 | $97.66 | $99.92 |
| 10 | Feliciano Hernandez | | $0.00 | $0.00 | $0.00 |
| 11 | JD Naranjo | | $0.00 | $0.00 | $0.00 |
| 12 | Valentino Flores | 4.5 | $2.26 | $97.66 | $99.92 |
| 13 | Rajib Das | | $0.00 | $0.00 | $0.00 |
| 14 | 0 | | $0.00 | $0.00 | $0.00 |
| 15 | 0 | | $0.00 | $0.00 | $0.00 |
| 16 | Saha Jayanta | | $0.00 | $0.00 | $0.00 |
| 17 | Carlos Fernandez | 4.5 | $2.26 | $97.66 | $99.92 |
| 18 | 0 | | $0.00 | $0.00 | $0.00 |
| 19 | Adrian Amigon | 4 | $2.01 | $86.81 | $88.82 |
| 20 | Enamul Shakur | 4 | $2.01 | $86.81 | $88.82 |
| 21 | Islam Mohamed | | $0.00 | $0.00 | $0.00 |
| 22 | Lipton Barman | | $0.00 | $0.00 | $0.00 |
| 23 | Saruk Miah | 4 | $2.01 | $86.81 | $88.82 |
| 24 | Mr T | 4 | $2.01 | $86.81 | $88.82 |
| 25 | 0 | | $0.00 | $0.00 | $0.00 |
| 26 | 0 | | $0.00 | $0.00 | $0.00 |
| 27 | David Ward | | $0.00 | $0.00 | $0.00 |
| 28 | 0 | | $0.00 | $0.00 | $0.00 |
| 29 | Mary Harvey | | $0.00 | $0.00 | $0.00 |
| 30 | Kendra Treichler | | $0.00 | $0.00 | $0.00 |
| 31 | 0 | | $0.00 | $0.00 | $0.00 |

### Barista

| # | Name | Points | Cash Tips | CC Tips | Tip Total |
|---|------|--------|-----------|---------|-----------|
| 1 | Peba Bhuit | 2.5 | $1.26 | $54.25 | $55.51 |
| 2 | Roy Nantu | 2.5 | $1.26 | $54.25 | $55.51 |
| 3 | Syed Hussain | | $0.00 | $0.00 | $0.00 |
| 4 | Kanti | | $0.00 | $0.00 | $0.00 |
| 5 | 0 | | $0.00 | $0.00 | $0.00 |
| 6 | RM | | $0.00 | $0.00 | $0.00 |