D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA Collective Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SALIM SHAHRIAR, MUHAMMAD ISLAM,
AND MARY HARVEY on behalf of
themselves and all others similarly situated,

INDEX NO: 08-cv-00057

Plaintiffs,

v.

SMITH & WOLLENSKY RESTAURANT
GROUP, INC. d/b/a PARK AVENUE
RESTAURANT AND FOURTH WALLS
RESTAURANTS LLC, d/b/a PARK
AVENUE RESTAURANT,

Defendants.
-----------------------------------------------------------x

## DECLARATION OF MUHAMMAD iSLAM

I, Muhammad Islam, under penalty of perjury, affirm as follows:

1.   I was employed by Defendants as a waiter and then a captain at Park Avenue Café within the last three years.

2.   Throughout my employment at Park Avenue, I was paid less than the federal minimum wage.

3.  When I began working for Park Avenue, each individual server/captain was required to share his tips with several employees, including runners, coffee makers, silverware polishers and expediters.

4.  The coffee makers with whom we shared tips never communicated with customers or provided direct customer service. Their job duties were simply to make coffee. These employees were listed under the "coffee" category in the tip-out sheets.

5.  The coffee makers with whom I was required to share tips included Shrukh (last name unknown) (subsequently to runner), Sayid Hussain and Roy Nantu.

6.  Similarly, the expediters with whom we shared tips primarily called food orders into the kitchen, and the silver/glass polishers polished silver and glass. None of these employees ever communicated with customers or provided direct customer service.

7.  The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

8.  The silver/glass polishers with whom I was required to share tips included Peppe Bhuit.

9.  The expediters with whom I was required to share tips included Saha (last name unknown), Fausto (last name unknown), and Carlos (last name unknown).

10. To the best of my recollection, expediters were listed under the "runner" categories in the tip-out sheets, and silver/glass polishers under "silver."

11. In the middle of 2007 Santiago Pasentez became a service manager at Park Avenue.

12. After Mr. Pasentez became service manager, Park Avenue required employees to participate in a tip-pool.

13. I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

14. Mr. Pasentez made clear that he was in control of the tip-pool, and had no say in any detail of the tip-pool.

15. Park Avenue continued to require us to share tips with silver polishers, expediters and coffee makers by placing them in the tip-pool.

16. After the implementation of the tip-pool at Park Avenue, Park Avenue required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

17. For example, Roger Moler, a manager at the restaurant and referred to by all employees as a manager, participated in the tip-pool.

18. In an attempt to conceal Mr. Moler's participation in the tip-pool, his share is reflected in the "Barista" section of the tip-out sheet, under the initials 'RM' instead of his full name.

19. Mr. Moler's job duties were to manage the restaurant and the bar, and he was introduced to us as a manager.

20. Mr. Moler frequently closed the restaurant, and we needed Mr. Moler's permission to leave the restaurant.

21. I witnessed Mr. Moler interview employees for hire.

22. I was witnessed employees disciplined by Mr. Moler.

23. Mr. Moler's primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily

meetings with servers in preparation for each shift, (e) verifying the money reports at the end of the night, and (f) sending employees home early if necessary.

24. Mr. Moler was frequently the most senior employee present in the restaurant.

25. When for any given reason a charge was to be 'comped', *i.e.,* voided, Mr. Moler had authority and routinely authorized these voids for the servers.

26. When a customer asked to speak to a manager, they were often referred to Mr. Moler.

27. Mr. Moler had special cards or access codes with which he could access the computer system to perform managerial functions such as changing the prices of items, comping items, voiding checks, reopening closed checks, reauthorizing checks, etc.

28. After the tip-pool was imposed on us, Park Avenue never provided us with any accounting regarding how tips were distributed. They simply handed us our envelopes with money the following day. Accordingly, I have no way of knowing whether all of the tip money received on any given night was distributed into the tip-pool.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: New York, New York
February 13, 2008

_____
Mohammad Islam