Matthew D. Kadushin (MK 1968)
Joseph, Herzfeld, Hester and Kirschenbaum LLP
757 Third Avenue, 25th Floor
New York, NY  10017
Tel: (212) 688-5640
Fax:  (212) 688-2548
matthew@jhllp.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

**SALIM SHAHRIAR, MUHAMMAD**
**ISLAM, AND MARY HARVEY on behalf**
**of themselves and all others similarly**
**situated,**

                              **INDEX NO: 08 CIV. 057(MGC)**

              **Plaintiffs,**

      **v.**

**SMITH & WOLLENSKY RESTAURANT**
**GROUP, INC. d/b/a PARK AVENUE**
**RESTAURANT AND FOURTH WALLS**
**RESTAURANTS LLC, d/b/a PARK**
**AVENUE RESTAURANT,**
--------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................2

    A.  Defendants' Illegal Tip-Misappropriation .........................................................3

          i.  Throughout the Covered Period Defendants
              Illegally Required Class Members to Share
              Tips with Non-Service Employees .........................................................3

          ii.  In or Around May 2007 Defendants Illegally
              Imposed a Mandatory Tip-Pool that Included
              A Manager ...............................................................................................6

    B.  Defendants' Do Not Pay Employees Spread of Hours Premium ......................9

LEGAL ARGUMENT .....................................................................................................10

    A.  Plaintiffs State Law-Based Wage-Hour Claim
        Should be Certified For Class Treatment Under Rule 23 ...............................10

         i.  Plaintiffs Satisfy All Requirements of Rule 23 ....................................11

              a. Class is identifiable and ascertainable.......................................12

              b. Numerosity is met .....................................................................12

               c. Typicality and commonality are met..........................................12

               d. Plaintiffs will adequately represent the class ............................15

              e.  Plaintiffs counsel should be appointed under Rule 23(g) .........15

         ii.  The Proposed Class Satisfies the Requirements of Rule 23(b)(3)........17

              a. Common Questions of law and Fact Predominate....................17

              b. Class Treatment is superior to other alternatives......................18

    IV. CONCLUSION................................................................................................19

# I.    PRELIMINARY STATEMENT

Plaintiffs Salim Shahriar, Muhammad Islam, and Mary Harvey and opt-in Plaintiffs (collectively referred to as "Plaintiffs") submit this memorandum in support of their motion for class certification of their state law claims under Federal Rule of Civil Procedure 23 ("Rule 23").[1]

On January 4th, 2008, Plaintiffs Salim Shahriar, Muhammad Islam, and Mary Harvey filed this Action on behalf of themselves and others similarly situated.  Plaintiffs subsequently amended the Complaint on July 24, 2008.

Plaintiffs – current and former servers at Park Avenue restaurant – filed this action to recover their unpaid wages from Defendants Fourth Walls Restaurant LLC and Smith & Wollensky Group Inc. (collectively, "Defendants" or "Park Avenue") pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and New York Labor Law.

The Parties previously entered into an agreement allowing Plaintiffs to disseminate notices of pendency to all putative FLSA Plaintiffs.  22 Plaintiffs opted in to this action. Plaintiffs now seek certification of their New York law claims as a class action pursuant to Rule 23.  Specifically, Plaintiffs' Amended Complaint asserts four claims under New York law: (1)

---

[1] In support of this motion, Plaintiffs herewith submit the Declaration of Matthew D. Kadushin ("Kadushin Decl."), attaching thereto as Exhibit A the Amended Complaint in this action ("Kadushin Ex. A"), as Exhibit B excerpts from the transcript of the October 19, 2009 deposition of Plaintiff Mary Harvey ("Kadushin Ex. B"), as Exhibit C excerpts from the transcript of the October 21, 2009 deposition of Plaintiff Lawrence LaRocca ("Kadushin Ex. C"), as Exhibit D excerpts from the transcript of the October 26, 2009 deposition of Plaintiff Masud Ahad ("Kadushin Ex. D"), as Exhibit E excerpts from the transcript of the October 21, 2009 deposition of Plaintiff Salim Shahriar ("Kadushin Ex. E"), as Exhibit F excerpts from the transcript of the October 22, 2009 deposition of Plaintiff Muhammad Islam, ("Kadushin Ex. F"), as Exhibit G the New York Department of Labor's ("NYDOL") Tip Appropriation Law Policy Guidelines ("Tip Guidelines")(Kadushin Ex. G), as Exhibit H *Tandoor Rest., Inc. v. Cmm'r of Labor*, Docket No. PR-82-85 (Dec. 23, 1987) (Kadushin Ex.H), as Exhibit I NYDOL Opinion Letter of Oct. 27, 1998 ("Kadushin Ex. I"), as Exhibit J NYDOL Opinion Letter of July 12, 2000 ("Kadushin Ex. J"), as Exhibit K NYDOL Opinion Letter of October 3, 2005 ("Kadushin Ex. K"), as Exhibit L NYDOL Opinion Letter of February 3, 2009 ("Kadushin Ex. L"), as Exhibit M sample payroll records from February 2005 and February 2006 ("Kadushin Ex. M"); as Exhibit N proposed notice to class ("Kadushin Ex. N"); the Declaration of Mary Harvey ("Harvey Decl."); the Declaration of Salim Shahriar ("Shahriar Decl."); the Declaration of Muhammed Islam ("Islam Decl."); the Declaration of Masud Ahad ("Ahad Decl."); and the Declaration of Andrew Mellor ("Mellor Decl.").

Defendants failed to pay servers the New York minimum wage for all hours worked including overtime hours, N.Y. Labor Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.2, 137-1.5; (2) Defendants failed to provide servers with overtime pay at the rate of one and one half times their regular rate for hours worked in excess of 40 per week, N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3 ; (3) Defendants illegally retained portions of servers' tips, N.Y. Labor Law § 196-d ("Section 196-d"); and (4) Defendants failed to provide spread of hours pay of one hour's pay at the minimum wage when a server's workday was longer than ten hours, N.Y. Comp. Codes. R. & Regs. tit. 12, § 137-1.7.

Plaintiffs respectfully request that the Court enter an Order (1) certifying this action as a class action pursuant to Rule 23 on behalf of all employees employed at Defendants Fourth Walls Restaurant LLC and Smith & Wollensky Group Inc. ("Park Avenue") in a server position including but not limited to captains, "front waiters," and "back waiters" ("Class Members") from January 4th, 2002 until the entry of a final judgment in this matter (the "Class Period"); (2) appointing Plaintiffs Salim Shahriar, Muhammad Islam and Mary Harvey as Class Representatives; and (3) appointing Joseph, Herzfeld, Hester and Kirschenbaum LLP as Class Counsel.

## II.  BACKGROUND

Defendants own and operate Park Avenue restaurant in Manhattan.  Park Avenue has individual dining (a la carte) in one section of the restaurant and a separate dinning area for group dining.  Plaintiffs, who worked as servers at Park Avenue, bring this action for unpaid wages on behalf of themselves and all Class Members.  The evidence submitted illustrates that throughout the Covered Period, Defendants (a) illegally retained employees' tips by requiring them to share tips with ineligible employees, (b) improperly used a "tip credit" to pay Class Members less than the regular minimum wage, (c) improperly compensated Class Members for

2

overtime, and (d) failed to pay Class Members New York's "spread of hours" premium.

### A.    DEFENDANTS' ILLEGAL TIP-MISAPPROPRIATION

Throughout the Covered Period, Defendants maintained tip policies and practices that were patently illegal.  Defendants required Class Members to share tips with expediters, dishwashers, silver polishers, and coffee makers who had no direct contact with customers. Because of the manner in which the restaurant was constructed, these individuals performed their duties in the lower level of the restaurant – a place where the costumers could not even see the employees let alone have any direct contact with them. Thus, these individuals are clearly not eligible under the pertinent authority. Moreover, Defendants for a limited period unlawfully included a manager in the tip-pools.  By requiring Class Members to share tips with non-service employees and a manager, Defendants forced the servers to subsidize the wages of these employees and allowed the owners of Park Avenue restaurant to reap unwarranted profits at the expense of the servers.

### i.    Throughout The Covered Period Defendants Illegally Required Class Members To Share Their Tips With Non-Service Employees

Throughout the Covered Period, Defendants illegally required waiters to share their tips with non-service employees, including dishwashers, silver polishers, coffee makers, and expediters, who provided no direct customer service. Under New York Labor Law an employer may not retain employees' tips and/or require servers to share tips with anyone other than a "busboy or similar employee." N.Y. Labor Law § 196-d ("Section 196-d"). It is well-settled that "similar employees" include only those individuals who provide direct customer service and have direct interaction with customers as outlined below.

In interpreting Section 196-d's distinction between service and non-service employees, the New York Department of Labor ("NYDOL") issued a memorandum entitled Tip

Appropriation Law Policy Guidelines ("Tip Guidelines").  The Tip Guidelines state,

> We will consider a 'similar employee' to be any employee who participates with the waiter in rendering some personal service to the patron – e.g. the hostess or captain, who greets and seats the patron.  We also will permit tip sharing with a short order cook at a counter – but not with a chef, dishwasher, or other non-service employee who renders no direct service to the public."

Kadushin Ex. G, NYDOL Tip Guidelines at 2. The Tip Guidelines were endorsed by the New York Industrial Board of Appeals in *Tandoor Rest., Inc. v. Cmm'r of Labor*, Docket No. PR-82-85 (Dec. 23, 1987) (finding that kitchen workers, including expediters and dishwashers, provided no customer service and could not lawfully be part of the tip-pool). "[E]mployees who do not render direct service or merely do soon an incidental basis, such as dishwashers and managers, are not eligible to be included in a mandatory tip-sharing." Attached to Kadushin Decl. as Ex. L, NYDOL Opinion Letter of February 3, 2009.

Courts in the Second Circuit have likewise interpreted Section 196-d to prohibit tip sharing with non-service employees that do not regularly interact with the customers. *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) (employees must "'have more than *de minimis* interaction with the customers'" to be eligible to receive tips) (*quoting Kilgore v. Outback Steakhouse*, 160 F.3d 294, 301 (6th Cir. 1998)); *Chan v. Triple Palace, Inc.*, 03 Civ. 6048, 2006 WL 851749, at *15 (S.D.N.Y. March 30, 2006) ("Chan I") (stating that the inclusion of non-service employees in a tip-pool violates Section 196-d).

Federal courts that have interpreted language in the FLSA that is similar to that of Section 196-d have reached the same conclusion regarding the inclusion of non-service

employees in a tip pool.[2]  Specifically, the consensus in all relevant case law is that employees

such as like salad preparers, diswashers, kitchen staff, and service bartenders who have no

customer contact or *de minimis* contact  cannot be included in tip-pool. *Myers v. Copper Cellar

Corp.*, 192 F. 3d 546, 550 (6th Cir. 1999)( "Because the salad preparers abstained from any direct

intercourse with diners, worked entirely outside the view of restaurant patrons, and  solely

performed duties traditionally classified as food preparation or kitchen support work, they could

not be validly categorized as 'tipped employees'"); *Rousell v.  Brinker International, Inc.*,  H-05-

3733, 2008 U.S. Dist. LEXIS,  at *44 (S.D. Tex. July 9, 2009) ( "Where employees perform

some duties that entail customer service and others that do not, the employees' level of direct

customer interaction is critical to a determination of whether the employee may participate in a

mandatory tip pooling arrangement."); *Elkins v. Showcase, Inc.*, 749 P.2d 977, 989 (Kan. 1985)

(holding that "non-service bartenders" were not eligible to participate in a mandatory tip pool

because they "were located behind a wall so they did not have any contact with customers and

were not in a position to receive tips").

Defendants' tip-sharing scheme was illegal under Section 196-d because the expediters,

dishwashers, silver polishers, and coffee makers with whom servers were required to share their

tips had no interaction with customers.[4]  With regard to expediters, Park Avenue attempted to

conceal its violation of the law by listing expediters under the "Waiter/runner" section in the tip-

out sheet.[5]

Plaintiffs and declarants have identified of specific non-service employees with whom

---

[2] The language used in New York Law 196-d is similar to language used in FLSA 29 U.S.C. § 203(m).  *Chan v. Triple Palace, Inc., 03 Civ. 6048,* 2006 WL 851749, at *14-15 (S.D.N.Y. March 30, 2006).
[4] Harvey Decl. ¶ 3; Kadushin Ex. B, Harvey Dep. 68:16-69:17, 71:20-72:7, 90:4-18; Kadushin  Ex. C, LaRocca Dep. 33:20-34:5; Islam Decl. ¶ 3; Kadushin  Ex. F, Islam Dep. 21:10-12; Mellor Decl. ¶ 3; Shahriar Decl. ¶ 3.

[5] Harvey Decl. ¶¶ 15, 19 and Harvey Ex. B; Islam Decl. ¶ 18; Ahad Decl. ¶ 7 and Ahad Ex. A; Shahriar Decl. ¶ 16 and Shahriar Ex. A.

they were required to share tips and whose names appear on Defendants' tip-out sheets.[6] None of

these employees provided *any* (not even *de minimis*) direct customer service or even talked to

customers.  Their duties, respectively, were calling orders into the kitchen, washing dishes,

polishing silver and glass, and making coffee.[7]  *See Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d

706, 711 (S.D.N.Y. 2007) (stating that individuals who do not provide direct customer service

may not receive tips); *Chan I*, 2006 WL 851749, at *15 (same). All dishwasher, expediter, and

coffee maker duties at Park Avenue were performed in the kitchen, and which was on a different

floor than the dining area.  Therefore, these individuals were never even visible to any customer.[8]

*Myers*, 192 F. 3d at 550. Thus Defendants requirement that Plaintiffs share tips with these non-

service individuals was illegal.

   As a result of Defendants' illegal requirement that tipped employees share tips with non-

service employees, all Class Members are entitled to recover all tips wrongfully distributed to the

non-service employees *and* the difference between the full minimum wage and the hourly wage

they were in fact paid. *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 WL 313483 at *19

(S.D.N.Y. Feb. 1, 2007) ("*Chan* II")(awarding misappropriated tips and difference in hourly

wage to the plaintiffs).

---

[6] Harvey Decl. ¶¶ 5, 7, 8; Islam Decl. ¶¶ 5, 7, 9; Shahriar Decl. ¶¶ 5, 7, 9.

[7] Harvey Decl. ¶¶ 4, 6; Kadushin Ex. B, Harvey Dep. 28:7-29:11 (expediter), 31:12-21 (same), 59:6-14 (same), 38:4-18 (coffee maker), 112:10-113:2 (silver polisher); Kadushin Ex. C, LaRocca Dep. 25:3-18 (expediter), 37:1-9 (same), 29:6-30:8 (coffee maker), 32:12-32:15 (silver polisher); Kadushin Ex. D, Ahad Dep. 16:6-17:16 (expediter), 54:15-21 (silver polisher), 62:7-10 (same), 62:11-21 (coffee maker); Shahriar Decl. ¶¶ 4,6; Kadushin Ex. E, Shahriar Dep. 32:10-33:4 (coffee maker), 51:4-6 (silver polisher); 57:21-58:6 (coffee maker and silver polisher) Islam Decl. ¶¶ 4, 6; Kadushin Ex. F, Islam Dep. 13:6-14:6 (expediter), 17:18 -18:9 (coffee maker), Mellor Decl. ¶¶ 4-5.

[8] Kadushin Ex. B, Harvey Dep. 19:16-19:18 (kitchen downstairs), 31:12-21(expediter), 38:4-18 (coffee maker); Kadushin Ex. C, LaRocca Dep. 24:17-19 (expediter), 29: 21:-30:16 (coffee maker); Kadushin Ex. D, Ahad Dep. 16:6-17:16 (expediter); Kadushin Ex. E, Shahriar Dep. 32:10-33:4 (coffee maker); Kadushin Ex. F, Islam Dep. 13:6-14:6 (expediter), 17:18 -18:9 (coffee maker).

[19] Kadushin Ex. G, Tip Guidelines at 1.

ii.    **In Or Around May 2007 Defendants Illegally Imposed A Mandatory Tip-Pool That Included A Manager**

Park Avenue instituted a mandatory tip-pooling system in or around May 2007. Park Avenue's mandatory tip-pooling system is exactly the type of system that Section 196-d was designed to prohibit. The Tip Guidelines provide that it is a violation of Section 196-d for an employer to impose *any* tip-pooling arrangement on tipped employees.[19]  The NYDOL justified the strict rule:

> Generally we have "found that where [tip pooling] arrangements are a condition of employment, there is more likely to be abuse and exploitation even where management supposedly does not handle the tip distribution or share in the pool. (In many cases, the employer depends on the tip-pooling arrangement in establishing the level of wages paid, and thus indirectly is appropriating tips to supplement wages.)[20]

 "If the language of [Section 196-d] is to have any meaning whatsoever, it must be read as prohibiting an employer from requiring that an employee surrender and suffer a monetary loss of his or her tips." *Tandoor Rest., Inc*., at 3.  Thus, the NYDOL's consistent position is that in order to avoid violating Section 196-d, tip-pools must be (a) completely voluntary, *i.e.,* not made part of the terms of employment, (b) initiated by the members of the tip-pool, and (c) distributed according to a formula chosen by the employees.[21]

Declarants and all Plaintiffs who have been deposed have uniformly stated that in or around May 2007, Park Avenue unilaterally imposed a mandatory tip-pool, the terms of which were maintained and enforced by the restaurant's management, not the servers or similarly

---

[20] *Id*. at 2.

[21] *See* Kadushin Ex. I (under Section 196-d, "the employer may not compel its service employees to pool their tips against their will; any such arrangement must be completely voluntary and initiated by the employees themselves"); Kadushin Ex. J ("[T]his tip pooling arrangement is legal so long as it remains completely voluntary on behalf of all participants and the terms of the arrangement are determined by the participants, free from any influence by the employer."); Kadushin Ex. K ("All tip-pooling agreements must be completely voluntary.  An employee who does not wish to participate in a tip-pooling agreement may not be compelled to do so, either by his employer or by his fellow employees.").

tipped employees.[22]  When one employee asked for information pertaining to the details of the tip-pool, she was informed by management that the information is confidential.[23]  After this request, Park Avenue continued to illegally require employees to share tips with expediters, silver polishers, and coffee makers by including them in the tip-pool.[24]

In addition, Park Avenue placed a manager in the mandatory tip-pool.[25] Section 196-d prohibits any "employer or his agent or an officer or agent of any corporation" from participating in a tip-pool.  *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (invalidating a tip-pool in which management took part); *Ayres v. 127 Rest. Corp*, 12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998) (finding that as Defendant's manager "was not an employee 'who customarily and regularly received tips,'" he could not be part of the tip-pool).

Park Avenue attempted to conceal its violation of the law by listing the manager, Roger Morlor, by initials ("RM") only (as opposed to the other employees listed by name) in the "Barista" section.[26] Mr. Moler's job functions clearly make him management.  In addition to managing the bar, his primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) scheduling and/or vacation requests, (f) verifying the money reports at the end of each night, and (g) sending employees home early.[27] Mr. Moler was introduced to Park Avenue employees as a manager and referred by them as a manager.[28] Mr.

---

[22] Harvey Decl. ¶¶ 12-13; Islam Decl. ¶¶ 12-13; Ahad Decl. ¶¶ 3,4; Shahriar Decl. ¶¶ 12, 13; Kadushin Ex. E, Shahriar Dep. 77:7-22; Mellor Decl. ¶¶ 8-9.

[23] Harvey Decl. ¶ 27; Kadushin Ex. B, Harvey Dep. 177:20-178:6.

[24] Mellor Decl. ¶ 10; Harvey Decl. ¶¶ 14-15 and Harvey Ex. B; Islam Decl. ¶ 15 and Islam Ex. A; Ahad Decl. ¶¶ 18-22 and Ahad Ex. A; Shahriar Decl. ¶ 15 and Shahriar Ex. A.

[25] Harvey Decl. ¶ 17; Islam Decl. ¶ 17; Ahad Decl. ¶¶ 5-6; Shahriar Decl. ¶¶ 15-16.

[26] Harvey Decl. ¶¶ 15, 19 and Harvey Ex. B; Islam Decl. ¶ 18; Ahad Decl. ¶ 7 and Ahad Ex. A; Shahriar Decl. ¶ 16 and Shahriar Ex. A.

[27] Harvey Decl. ¶¶ 22; Islam Decl. ¶ 23; Ahad Decl. ¶ 12; Shahriar Decl. ¶ 21.

[28] Harvey Decl. ¶¶ 17, 19; Islam Decl. ¶¶ 17, 19; Ahad Decl. ¶¶ 7, 9; Shahriar Decl. ¶ 17.

Moler interviewed employees for hire and disciplined employees,[29] including opt-in plaintiff Masud Ahad, whom he write up and disciplined.[30]  Mr. Moler frequently closed the restaurant, and employees needed his permission to leave the restaurant.[31]  Mr. Moler was often the most senior Park Avenue member present in the restaurant.[32]

Because they were mandatory, Defendants' tip-pools are illegal under New York Law. Nevertheless, as outlined above, the tip-pools further run afoul of Section 196-d because they allow improper persons to share in the pool – precisely the concern articulated by the NYDOL in promulgating the Tip Guidelines.

### B.    DEFENDANTS DO NOT PAY EMPLOYEES NEW YORK'S SPREAD OF HOURS PREMIUM

Defendants do not pay employees an additional hour of pay for every workday that is longer than ten hours, in violation of New York law, which provides, "[o]n each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.  "The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.

Defendants' payroll records establish that they did not pay employees whose spread of hours exceeded ten any premium, as required.  Specifically, a sample time period was selected at random to review for spread of hour violations (February 2005 and February 2006).[33]  These

---

[29] Harvey Decl. ¶ 21; Islam Decl. ¶¶ 21-22; Ahad Decl. ¶¶ 10-11; Shahriar Decl. ¶¶ 19-20.

[30] Ahad Decl. ¶ 11.

[31] Harvey Decl. ¶ 20; Islam Decl. ¶ 20; Ahad Decl. ¶ 9; Shahriar Decl. ¶ 18.

[32] Harvey Decl. ¶ 23; Islam Decl. ¶ 24; Ahad Decl. ¶ 13; Shahriar Decl. ¶ 22.

[33] Kadushin Ex. M.

employees' payroll records reflect that none of the employees who worked as servers were paid

any additional premium at the "basic minimum hourly wage," a clear violation of New York law.

Thus, Park Avenue had a uniform practice not to pay spread of hours for all servers.

### III.  LEGAL ARGUMENT

**A.    PLAINTIFF'S STATE LAW-BASED WAGE-HOUR CLAIMS SHOULD BE CERTIFIED FOR CLASS TREATMENT UNDER RULE 23**

Unlike FLSA claims (which can only be brought by persons who opt-in to a collective

action), New York Labor Law claims are appropriate for class action determination under Rule

23. Courts in this Circuit have consistently found that state law allegations can be certified under

Rule 23 together with claims conditionally certified under 29 U.S.C. 216(b).[34] Indeed, "where a

collective action under the FLSA that is based on the same set of facts has been approved, there

is an inclination to grant class certification of the state labor law claims."  *Lee*, 236 F.R.D. at

202-203.  In addition, if the FLSA claims are conditionally certified as a collective action,

certifying the state law claims as a class action will promote judicial economy.  *Scholtisek v.*

*Eldre Corp.*, 229 F.R.D. 381, 393-94 (W.D.N.Y. 2005).

The elements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt

---

[34] It is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions. *See, e.g., Gorat v. Capala Brothers, Inc.*, 07 Civ. 3629, 2009 WL 3347091, at *3-8 (E.D.N.Y. Oct. 16, 2009)*; Patel v. Baluchi's Indian Rest.*, 08 Civ. 9985, 2009 U.S. Dist. LEXIS 66512, at *17-18 (S.D.N.Y. Jul. 30, 2009); *Gardner v. Western Beef Properties, Inc.*, 07 Civ. 2345, 2008 U.S. Dist. Lexis 47027, at *4-5 (S.D.N.Y. June 17, 2008); *Guzman v. VLM, Inc.*, 07 Civ. 1126, 2008 U.S. Dist. Lexis 15821, at *27-29 (E.D.N.Y. March 2, 2008); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 162-163 (S.D.N.Y. 2008); *Niemiec v. Ann Bendick Realty*, 04 Civ. 00897, 2007 WL 5157027, at *5 (E.D.N.Y. Apr. 23, 2008); *Westerfield v. Washington Mutual Bank*, 06 Civ. 2817, 2007 U.S. Dist. LEXIS 54830, at *4-8 (S.D.N.Y. Jul. 26 2007); *Duchenne v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 202 (S.D.N.Y. 2007); *Iglesias-Mendoza v. La Belle Farm*, 239 F.R.D. 363, 374-75 (S.D.N.Y.  2007); *Trinidad v. Breakaway Courier Sys.*, 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *5 (S.D.N.Y. Jan. 12, 2007); *Torres v. Gristede's Operating Corp.*, 06 Civ.1756, 2006 U.S. Dist. LEXIS 74039, at *54-55 (S.D.N.Y. Sept. 28, 2006); *Wraga v. Marble Lite, Inc.*, 05 Civ. 5038, 2006 U.S. Dist. LEXIS 60457, at *9 (E.D.N.Y. Aug. 22, 2006); *Jankowski v. Castaldi*, 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237, at *4 (E.D.N.Y. Jan. 13, 2006); *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381, 392 (W.D.N.Y.  2005); *Smellie v. Mount Sinai Hosp.*, 03 Civ. 0805, 2004 U.S. Dist. LEXIS 24006, at *20-21 (S.D.N.Y. Nov. 29, 2004); *Mascol v. E & L Transp.*, 03 Civ. 3343, 2005 U.S. Dist. LEXIS 32634, at *25-26 (E.D.N.Y. June 29, 2005); *Ansoumana v. Gristedes Opererating. Corp*m, 201 F.R.D. 81, 89 (S.D.N.Y. 2001); *Brzychnalski v. UNESCO, Inc.,* 35 F. Supp. 2d 351, 354 (S.D.N.Y 1999).

a standard of flexibility," *Marisol A. v. Guiliani,* 126 F.3d 372, 376 (2d Cir. 1997), and "are

encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall

purpose." *Niemiec*, 2007 WL 5157027 at *5 (citations omitted). "These purposes include the

protection of small claims through aggregation and promoting judicial economy." *Id.* (citation

omitted). In addition, "'it is appropriate for the court to consider the inability of the poor or

uninformed to enforce their rights and the improbability that large numbers of class members

would possess the initiative to litigate individually.'" *Id.* (citation omitted).

The Complaint defines the putative class as including all current and former employees at

Park Avenue in any server position, including but not limited to all captains, "front waiters," and

"back waiters" from January 4, 2002 until the present who are seeking to recover unpaid wages

and overtime compensation owed under the New York Labor Law. NY CLS Labor §§ 198, 663.

Plaintiffs allege that Park Avenue required its tipped employees to share their tips with

management and other non-service employees and that Defendants failed to pay its employees

proper overtime rate.

Rule 23 provides that a court should certify a class where, as here, the Plaintiff satisfies

the four prerequisites of Rule 23, as well as one of the three prerequisites of Rule 23(b). *See In

Re Initial Pub. Offering Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006) ("A district judge may certify a

class only after making determinations that each of the Rule 23 requirements has been met.").

The record here satisfies the prerequisites for Rule 23 class certification.

### i.     Plaintiffs Satisfy All Requirements Of Rule 23

To be certified, a class must meet the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there
are questions of law or fact common to the class, (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class, and (4) the
representative parties will fairly and adequately protect the interests of the class.

11

Fed. R. Civ. P. 23(a).  In addition, Rule 23(a) implicitly requires that class members be

identifiable and ascertainable. J*ankowski v. Castaldi*, 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237,

at *4 (E.D.N.Y. Jan. 13, 2006).  The class proposed here meets all four criteria.

In considering a motion for Rule 23 class certification, "a court may not address the

merits of the action except to the extent that a merits issue overlaps with a Rule 23 requirement."

*In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008).  Moreover, "[t]he

determination as to a Rule 23 requirement is made only for the purposes of class certification and

is not binding on the trier of facts at the subsequent merits stage of the action."  *Id.* at 395.

### a.    The proposed class is identifiable and ascertainable

A class is identifiable and ascertainable where it is "administratively feasible for a court

to determine whether a particular individual is a member of the class."  *Jankowski*, 2006 U.S.

Dist. LEXIS 4237, at *14 (internal quotation omitted).  In addition, the class members must be

"ascertained by reference to objective criteria."  *Id.* (internal quotation omitted).  Here,

Defendants' records can easily identify all class members, *i.e.*, all individuals employed by

Defendant as tipped employees since January 4, 2002.  Therefore, the proposed class is

identifiable and ascertainable.

### b.    Numerosity is met

Numerosity under Rule 23(a)(1) is presumed where a putative class has forty or more

members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Iglesias-

Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007); *Ansoumana v. Gristede's

Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001).  Defendants' have provided

documentation to Plaintiffs that illustrates that the proposed class exceeds 200 members.

Therefore, numerosity is clearly established.

### c.    Typicality and commonality are met

Commonality and typicality are related concepts, and neither need be complete for class certification to be proper. *Ansoumana,* 201 F.R.D. at 86-87 (citing *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993) (if "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims")); *see also Marisol A.,* 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3)."). "The commonality requirement may be met when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'  A single common question may be sufficient to satisfy the commonality requirement." *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2005 WL 106895, at *2 (S.D.N.Y. Jan. 18, 2005) (citations omitted).  Rule 23(a)(2)'s commonality requirement is a liberal one, which "require[s] that only one issue be common to all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005); *see also Marisol A.*, 126 F.3d at 376; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 151, 156 (S.D.N.Y. 2008).  "As long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Iglesias-Mendoza*, 239 F.R.D. at 371 (internal quotations and citation omitted).

"[F]actual differences among the claims of the class members will not defeat certification." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *see also Ansoumana*, 201 F.R.D. at 86 (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted).  Indeed, "[o]nce a common question is identified,

differences among the questions raised by individual members [of the class] will not defeat commonality." *Iglesias-Mendoza*, 239 F.R.D. at 371 (internal quotation omitted, alteration in original).

      In this case, there are a number of questions of law and fact common to the putative class revolving around the legality of Defendants' compensation practices and policies. All of the Class Members were subject to the same tipping practices and policies, which Plaintiffs claim were illegal. Namely, all Class Members were required to share tips with the same people, many of whom Plaintiffs contend were not eligible for tips under Section 196-d. Accordingly, the legal determination as to whether certain individuals are inappropriately in the tip-pools is exactly the same for every Class Member. As "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability[,]" commonality and typicality are plainly satisfied. *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 3399067, at *5 (S.D.N.Y. Aug. 12, 2008) (internal quotation omitted).

      In addition, there are also common questions of law regarding the applicability and interpretation of New York Labor Law and relevant regulations. Nearly identical factual questions regarding an employer's payroll practices and compliance with minimum wage requirements as well as legal questions concerning the applicability of the New York Labor Law and any relevant defenses have been held to satisfy the commonality and typicality requirements. *See Id.* at *6; *Iglesias-Mendoza*, 239 F.R.D. at 371.

      Importantly, "[o]nce a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality." *Iglesias-Mendoza*, 239 F.R.D. at 371 (internal quotation omitted, alteration in original). Thus, any differences among Class Members regarding damages or other individual issues are immaterial to the

question of whether commonality exists.  Since Plaintiff and other Class Members challenge what they allege are illegal practices and procedures to which all of Defendants' tipped employees were subject, the commonality and typicality requirements are easily satisfied.

### d.    Plaintiffs will adequately represent the Class

The final requirement of Rule 23(a)(4) is that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy is satisfied where "the proposed class representative [has] an interest in vigorously pursuing the claims of the class, and [has] no interests antagonistic to the interests of other class members."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). The fact that typicality is satisfied "is strong evidence that [Plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate [Plaintiffs'] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.

Here, Plaintiffs Plaintiffs Salim Shahriar, Muhammad Islam, and Mary Harvey have stated their willingness and ability to act as class representatives.[35]  They were all subject to the same policies and practices and have no interests that are antagonistic to those of the Class.[36] The same legal arguments and strategies will be used to vindicate their claims and those of the Class.

### e.    Plaintiffs' counsel should be appointed class counsel under Rule 23(g)

With respect to appointment of class counsel, Rule 23(g) now requires that an attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class and that in appointing class counsel, the Court must consider the following:

- The work counsel has done in identifying potential claims in the action,

---

[35] Kadushin Decl. ¶ 16.

[36] Kadushin Decl. ¶ 17.

15

- Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

- Counsel's knowledge of the applicable law, and

- The resources counsel will commit to representing the class

A finding by the court that plaintiffs' counsel has diligently prosecuted the action, has demonstrated sufficient litigation experience and familiarity with the applicable law, and has adequate financial resources, is sufficient to warrant an appointment as class counsel under Rule 23(g). *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004).

Plaintiff respectfully submits that counsel Joseph, Herzfeld, Hester & Kirschenbaum LLP are qualified to handle wage and hour class and collective actions and, considering the work their counsel have performed in investigating their claims and pursuing this litigation, counsel's experience and knowledge of the applicable law, and the financial resources that counsel have already committed to this litigation, counsel is qualified to represent the class and will fairly and adequate represent the interests of the class.[37] *See also Niemiec*, 2007 WL 5157027, at *13.

Plaintiffs' counsel in this case are highly experienced in complex wage and hour litigation in general, and specifically litigation relating to the rights of New York City food-service employees.[38] *See, e.g., Delaney v. Geisha NYC LLC*, e*t al*, No. 09 Civ. 1458, 2009 U.S. Lexis 87381 (S.D.N.Y. Sept. 22 2009); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification of settlement class in wage and hour class action against New York City restaurants); *Williams v. Twenty Ones, Inc.*, No. 07 Civ. 3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective action of restaurant/club workers); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (conditionally certifying FLSA collective action of restaurant workers);

---

[37] Kadushin Decl. ¶¶ 18-25.

[38] *Id.*

*Pefanis v. Westway Diner,* No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082, at * 3 (S.D.N.Y. Oct. 8, 2008) (certifying collective action based upon complaint and one affidavit). Plaintiffs' counsel are willing and able to commit the necessary resources to represent the class and have already engaged in significant discovery.[39] Plaintiffs' counsel therefore meet the adequacy requirement of Rule 23.

### ii.    The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present but also "predominate over any questions affecting only individual members, and . . . class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff easily has met the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, *22 (S.D.N.Y. Jan. 12, 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a)].").

### a.    Common questions of law and fact predominate

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individual proof." *Moore v. Painewebber, Inc.* 306 F.3d 1247, 1252 (2d Cir. 2002); *Mendoza*, 2008 WL 3399067, at *7. The important inquiry here is whether "liability can be determined on a class-wide basis, even when there are some

---

[39] *Id.*

individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,

139 (2d Cir. 2001). Courts routinely find that common questions predominate in wage and hour

actions brought on behalf of a class of employees of the same employer challenging allegedly

illegal policies and practices. *See*, *e.g.*, *Frederick v. Dreiser Loop Supermarket Corp.*, No. 06

Civ. 15341, 2008 WL 4724721 (S.D.N.Y. Oct. 24, 2008); *Damassia*, 250 F.R.D. at 161;

*Gonzalez v. Nicholas Zito Racing Stable Inc.*, No. 04 Civ. 22, 2008 WL 941643 (E.D.N.Y.

March 31, 2008); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178 (S.D.N.Y. 2007);

*Iglesias-Mendoza*, 239 F.R.D. at 372-373; *Jankowski*, 2006 U.S. Dist. LEXIS 4237, at *12;

*Torres,* 2006 U.S. Dist. LEXIS , at *52-53.

Issues regarding whether class members were not paid appropriately "are about the most

perfect questions for class treatment." *Iglesias-Mendoza*, 239 F.R.D. at 373. Those issues,

which are the primary issues in this case for all Class Members, are subject to generalized proof

regarding Defendants' policies and practices. Thus, the common issues regarding the legality of

Defendants' compensation policies and practices clearly predominate over any individual issues

that may arise, such as questions of the damages to which each individual Class Member is

entitled.

### b.        Class treatment is superior to other alternatives

"Courts in this Circuit . . . have found that permitting New York Labor Law claims to

proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior

method." *Trinidad*, 2007 U.S. Dist. LEXIS 2914 at *25 (citing cases).

Courts routinely find superiority where, as here, it is unlikely that class members would bring

individual actions on their own behalf because the costs of individual litigation would likely

outweigh their recovery. *E.g.*, *Jankowski*, 2006 U.S. Dist. LEXIS 4237 at *13-14; *Frank*, 228

F.R.D. at 183-84; *Velez*, 2005 WL 106895, at *5; *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 394

(W.D.N.Y. 2005).  For these reasons, a class action is the superior way of adjudicating the state law claims in this action.

## V.  CONCLUSION

As detailed above, Plaintiffs clearly satisfy all the requirements of Rule 23. For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion and issue an order certifying the Class under Rule 23.  Plaintiffs have attached a proposed notice to class members as Exhibit N to Decl. of Matthew Kadushin.

Dated:  New York, New York
        November 11, 2009

Respectfully submitted,

JOSEPH, HERZFELD HESTER & KIRSCHENBAUM LLP

By: /s/ Matthew D. Kadushin
    Matthew D. Kadushin

757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiffs and the proposed class*